**Petition for Naturalization of Francesco APOLLONIO.**

**No. 627900.**

United States District Court,

S. D. New York.

Jan. 26, 1955.

Lawrence Wiseman, New York City, for petitioner.

William J. Kenville, New York City, Naturalization Examiner.

DAWSON, District Judge.

This case presents the issue as to whether an alien seaman who remained in the United States illegally after the expiration of his seaman's pass, but later served in the United States Army, is eligible for naturalization.

Petitioner, a native and citizen of Italy, seeks to be naturalized pursuant to Public Law 86, Chapter 162 of the 83rd Congress, 67 Stat. 108, 8 U.S.C.A. 1440a et seq.[1] The Immigration and Naturalization Service recommends that the petition be denied, on the ground that petitioner was not lawfully admitted to the United States.

The following facts are not in dispute:

---

1. The pertinent provisions of which are: "* * * notwithstanding the provisions of sections 310(d) and 318 of the Immigration and Nationality Act, any person, not a citizen, who, after June 24, 1950, and not later than July 1, 1955, has actively served * * * honorably, in the Armed Forces of the United States for a period or periods totaling not less than ninety days and who * * * (2) having been lawfully admitted to the United States, and having been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces, may be naturalized * * *." § 1440a.

Petitioner arrived in the United States at Philadelphia, Pennsylvania on or about August 22, 1947, as a seaman aboard the S.S. Rialto. Petitioner was given a 29-day seaman's pass pursuant to the regulations issued under Section 15 of the Immigration Act of 1924, 8 U.S.C.A. § 215.[2] Petitioner overstayed his leave and remained in the United States without legal authority so to remain.

On April 19, 1951, petitioner was drafted into the United States Army. On May 19, 1952, a warrant of arrest in a deportation proceeding was served upon petitioner, a hearing held, and petitioner paroled. In June of 1952, petitioner was shipped overseas as a soldier in the United States Army. On January 14, 1953, petitioner was honorably discharged from the United States Army at the convenience of the government because of alienage. On February 19, 1953, petitioner was afforded a hearing in his deportation proceeding and was found to be deportable. Petitioner then commenced this proceeding on November 24, 1953.

The record indicates further, without contradiction, that when petitioner was drafted, Selective Service had knowledge that he was an alien illegally in the United States; when petitioner, as a soldier in the United States Army, was shipped overseas, it was with the knowledge of the Immigration and Naturalization Service.

The Immigration and Naturalization Service urges that petitioner was not "admitted" to the United States within the meaning of the statute. The legislative history of the Act indicates that it was intended to apply to persons who were lawfully admitted either in an immigrant status or in a non-immigrant status, and the fact that events subsequent to their admission deprived them of that status would not be sufficient to deny them naturalization if they had served honorably in the United States Army.

In House Report No. 223, 1953,[3] which was submitted in connection with the bill which became Public Law 86, adopted on June 30, 1953, 67 Stat., Chap. 162, there is the statement:

"The purpose of the bill is to provide means for the expeditious naturalization of aliens lawfully admitted into the United States as immigrants or non-immigrants, who have served honorably, or are serving in the Armed Forces of the United States during the period beginning June 25, 1950 * * * and terminating on June 30, 1955."

The Report points out that many thousands of permanently residing aliens have enlisted in our Armed Forces and then states:

"Many more thousands, including those who have temporary residence only (students, visitors, 'treaty merchants' and their children, etc.), have been inducted in accordance with Public Law 51, 82d Congress * * *."

The Report states, with reference to the bill:

"It contemplated benefits only for the alien who has effected lawful entry, either in an immigrant or nonimmigrant status."

The Department of Justice recommended that the bill be amended to provide that the serviceman bear the burden of proving lawful admission.

The Report stated:

"The proposal that the serviceman be required to have a lawful status at the time of entering the Armed Forces was not included in the bill. While lawful admission as an immigrant or nonimmigrant is held to be a prerequisite to naturalization under the terms of H.R. 4233, the committee is of the opinion that the technicalities involved in connection with the continuance of such status

2. 8 C.F.R.1947 Supp. § 120.21. 1952 Revision, 8 U.S.C.A. §§ 1102, 1184, 1251(e).

3. U.S.Code, Cong. & Adm. News, 83rd Cong.1953, Vol. 2, p. 1716.

at the time of entering the Armed Forces would place an unwarranted burden on the serviceman and practically nullify the purpose of this legislation." U.S.Code, Cong. & Adm.News, 83rd Cong.1953, Vol. 2, p. 1716.

That a seaman possessing a seaman's pass is a non-immigrant and is lawfully admitted as such is shown by Part 214(d) of the Administrative Regulations under the Immigration and Nationality Act, U.S.Cong. & Adm.News, 1953, p. 2497. If he fails to leave at the expiration of the pass, he is in no different position than visitors or students who are admitted for temporary residence only and who overstay their time. The situation might be quite different in the case of a seaman who "jumped ship" and never acquired any legal right to admittance.

The recommendation of the Immigration and Naturalization Service that naturalization be denied in this case was based upon a finding that petitioner was, in fact, an immigrant at the time of entry and not a bona fide seaman. This was based upon a statement made by petitioner when examined by the Immigration and Naturalization Service on February 19, 1953, at which time the following questions were asked and answers given:

"Q. For how long a period was it your intention to remain in the United States at the time of your admission on August 15, 1947? A. I was trying to remain here forever.

"Q. At the time of your admission on that date, was it your intention to remain in the United States permanently? A. Yes Sir."

Petitioner, in an affidavit submitted in this matter, stated that he did not understand these questions at the time that they were asked of him, and sought a hearing. The hearing was then held by me at which he stated that while he had so testified at the immigration hearing, he misunderstood the question and the exact time period to which it related; that at the time of his departure from the ship, he intended to return to the ship and sail on it; that it was not until he had been ashore for several days that he decided to try to remain in the United States permanently.

■ What the intention of the petitioner was at the time that he left the ship, or whether he had any intention at that time, is, of course, a matter of the operation of his mind which would be difficult to establish. It is well established that "what the alien says and the documents he submits to the examining immigrant inspector, rather than his subjective intent or concealed motive for wishing shore leave, are determinative of his status as a non-immigrant." United States v. Prince Line, 2 Cir., 1951, 189 F.2d 386, 389; see also Brownell v. Gutnayer, D.C.Cir.1954, 212 F.2d 462; President of United States ex rel. Feretic v. Shaughnessy, D.C.S.D.N.Y.1954, 122 F.Supp. 739.

Petitioner was duly admitted to the United States as a non-immigrant. The immigration authorities were placed on notice that his continued stay in the United States was illegal, but they nevertheless permitted him to serve in the United States Army, instead of taking prompt action to compel his deportation. He served honorably in the Army, reaching the rank of Sergeant. Testimony given at the hearing before me indicates that he is a person of good moral character.

Since petitioner has all of the qualifications necessary for naturalization under the provisions of the statute, his petition for naturalization is approved. So ordered.