Petition for Naturalization of Johnny CHOW formerly Chew Zee Teh.
No. 661070.

United States District Court
S. D. New York.
Dec. 14, 1956.

Spar, Schlem & Burroughs, New York City, Joseph L. Andrews, New York City, of counsel, for petitioner.

Roy Babitt, General Counsel to District Director, Immigration and Naturalization Service, U. S. Department of Justice, New York City, Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel, for respondent.

DAWSON, District Judge.

The memorandum opinion in this matter was filed August 31, 1956. Thereafter, a motion was made for re-argument. The motion for re-argument was based upon cases which have been decided in this Court which, petitioner states, involve situations similar to the instant case in which petitioners were granted the right to naturalization, particularly the decisions in Petition of Boubaris, D.C.S.D.N.Y.1955, 134 F.Supp. 613. Petition of Chan Chick Shick, D.C.S.D.N.Y. 1956, 142 F.Supp. 410, and Petition of Zaino, D.C.S.D.N.Y.1955, 131 F.Supp. 456.

This is an application for naturalization by a seaman who, being illegally in the United States, was seized by the Immigration and Naturalization Service and held in detention quarters. On August 15, 1952, he was released on bond. On December 12, 1952, while still on bond, petitioner enlisted in the United

States Army and served therein until December 2, 1954, when he was honorably discharged.

Petitioner claims a right to naturalization under the provisions of the Act of June 30, 1953, Public Law 86, 83rd Congress, 8 U.S.C.A. § 1440a. This statute, so far as it is applicable here, provides that a person who after June 24, 1950 and not later than July 1, 1955, has served honorably in the Armed Forces of the United States for a period or periods totaling not less than 90 days and who "having been lawfully admitted to the United States, and having been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces, may be naturalized on petition filed not later than December 31, 1955" upon compliance with certain other provisions of the Chapter.

Petitioner admittedly never was admitted to the United States for permanent residence. His right to naturalization must be claimed, if at all, under the provision of the statute which requires as a prerequisite to naturalization (1) that he was "lawfully admitted" to the United States, and (2) that he had "been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces."

■ I have heretofore held that petitioner had at no time been "lawfully admitted" to the United States. This was an issue of fact. While he testified that when he entered the Country he did not intend to remain here permanently, I found his testimony unworthy of belief. It is well established that an alien seaman, admitted to the United States temporarily on a seaman's pass, who intends not to depart within the time limits of the pass, but rather to remain here permanently, has not lawfully been admitted to the United States. United States ex rel. Feretic v. Shaughnessy, 2 Cir., 1955, 221 F.2d 262, certiorari denied 1956, 350 U.S. 822, 76 S.Ct. 49.

In the Boubaris case, which is now on appeal to the Court of Appeals, the petitioner entered the United States lawfully in May, 1947, on a seaman's pass, departing within six days; thereafter, in July of the same year, he re-entered the Country unlawfully. He remained in the United States for more than one year, and in September, 1950, was inducted into the Army in which he served under honorable conditions for almost a year. In that case, the petitioner had been on one occasion lawfully admitted into the United States and had been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces.

In the present case, the Court held as a matter of fact that the petitioner had never been lawfully admitted to the United States. Furthermore, the Court held that petitioner had not been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces.. The issue in the Boubaris case was different from the issue in the present case.

In Petition of Chan Chick Shick, the Court held that at the time petitioner entered the United States on a seaman's pass, it was not his intention to remain permanently in the United States, and that, therefore, he was lawfully admitted to the United States. This was also the situation in In re Apollonio, D.C.S.D.N.Y.1955, 128 F.Supp. 288, 290, wherein this Court held on the facts that petitioner was lawfully admitted to the United States as a non-immigrant. In the present case, I held that the entry by petitioner was an unlawful entry since it developed at the hearing before the Court that petitioner intended to jump ship. In the opinion in In re Apollonio, I had stated with reference to the facts in that case:

"The situation might be quite different in the case of a seaman who 'jumped ship' and never acquired any legal right to admittance."

The finding of fact as to lawful admission was quite different in the present case from that in Petition of Chan Chick Shick.

Petitioner contends in the present case, however, that he was lawfully admitted to the United States, due to the fact that during his military service he served overseas and on his return he was permitted to enter the United States without a visa, as part of the Armed Forces. Petitioner contends that that entry constituted a lawful admission to the United States within the meaning of that phrase in Public Law 86.

In Petition of Zaino, Judge Dimock held that a seaman who had illegally entered the United States and lived there until his induction in the Armed Forces was entitled to naturalization under Public Law 86 on the ground that his subsequent return from Korea as a member of the Armed Forces was a lawful admission to the United States within the meaning of that term as used in Public Law 86. With the highest respect for the learned and distinguished Judge who wrote that opinion, I am constrained to state that I must reach an opposite conclusion, and that, in my opinion, the entry to the United States of an alien in the Armed Forces is not such lawful admission to the United States as comes within the meaning of Public Law 86. A case which so holds is Petition of D'Auria, D.C.D.N.J.1956, 139 F.Supp. 525.

[2]. The Congressional history of Public Law 86 makes it clear that Congress intended more than a mere "entry" when it used the phrase "lawfully admitted". In House Report No. 223, 1953, which was submitted in connection with the bill which became Public Law 86, U. S. Code Cong. & Admin. News, 1953, 83rd Cong., 1st Sess., Vol. 2, p. 1716, the House Committee stated:

"The purpose of the bill is to provide means for the expeditious naturalization of aliens lawfully admitted into the United States as immigrants or non-immigrants, who have served honorably, or are serving in the Armed Forces of the United States during the period beginning June 25, 1950 (which marked the opening of the Korean hostilities), and terminating on June 30, 1955 (expiration of the authority for induction under the amended Selective Service Act (65 Stat. 75 [50 U.S.C. A.Appendix, § 451 et seq.]))."

It further stated as a reason for the bill:

"Many thousands of permanently residing aliens have enlisted in our Armed Forces. Many more thousands, including those who have temporary residence only (students, visitors, 'treaty merchants' and their children, etc.) have been inducted in accordance with Public Law 51, 82d Congress (1951 amendments to the Universal Military Training and Service Act (65 Stat. 75 [50 U.S.C. A.Appendix, § 451 et seq.]))."

It then said:

"The bill H. R. 4233 does not propose a waiver of the basic requirements of the Immigration and Nationality Act relating to good moral character, attachment to the principles of the Constitution, and understanding of the English language. It contemplated benefits only for the alien who has effected lawful entry, either in an immigrant or nonimmigrant status."

■ There seems to have been no doubt that Congress had in mind that the provisions of the Act would be applicable only to those who had at one time had lawful admission either as an immigrant or non-immigrant, although a continuation of that status to the date of entering into the Armed Forces was not required.

Does an alien serviceman who is returning to the United States in the uniform of the Armed Forces enter the United States in either an immigrant or non-immigrant status? There is a specific section in the Immigration and Nationality Act relating to an entry by such aliens. It is contained in Sec. 284 of Subchapter II of the Immigration and Nationality Act, which relates to "Immigration". It provides:

"Nothing contained in this subchapter shall be construed so as to limit, restrict, deny, or affect the

coming into or departure from the United States of an alien member of the Armed Forces of the United States who is in the uniform of, or who bears documents identifying him as a member of, such Armed Forces, and who is coming to or departing from the United States under official orders or permit of such Armed Forces: *Provided,* That nothing contained in this section shall be construed to give to or confer upon any such alien any other privileges, rights, benefits, exemptions, or immunities under this chapter, which are not otherwise specifically granted by this chapter." 8 U.S.C.A. § 1354.

This provision of the Act allows an alien member of the Armed Forces who is in the uniform of the Armed Forces to enter the United States under official orders, but has the explicit proviso that this privilege shall not confer upon him any rights not otherwise specifically granted by the Immigration and Nationality Act of 1952.

■ The statutory dichotomy between "entry" and "lawful admission" is graphically illustrated by the legislation providing for the naturalization of aliens who served in the Armed Forces during World War II. An alien who was "lawfully admitted" qualified by just serving in the Armed Forces. But an alien who had merely "entered" was required to have served outside the continental limits of the United States, for the Act provided:

" * * * any person not a citizen * * * who has served or hereafter serves honorably in the military or naval forces of the United States during [World War II] and who (sic) * * * (a) was lawfully admitted into the United States * * *, or (b) having entered the United States * * * [but] being unable to establish lawful admission into the United States serves honorably in such forces beyond the continental limits of the United States * * * may be naturalized * * *." 8 U.S.C. § 1001 (1946).[1]

Indeed the terms "entry" and "lawful admission" are recognized to be used in contradistinction to each other in immigration legislation. See Ex parte Fillibertie, D.C.E.D.S.C.1945, 62 F.Supp 744; Petition of Weber, D.C.E.D.N.Y. 1945, 61 F.Supp. 683, 686. Hence the requirement of "lawful admission" should be given effect as a deliberate and meaningful statutory term of art.

If it had been intended that an alien who was a member of the Armed Forces could, by returning with the Armed Forces, acquire a "lawful admission" for naturalization purposes, Public Law 86 would have so provided. That Public Law 86 did not so provide was not an oversight since Public Law 597, 64 Stat. 316, which had been adopted on June 30, 1950, and which was continued by § 402(e) of the Immigration and Nationality Act of June 27, 1952, 8 U.S.C.A. § 1440 note, which was in effect when Public Law 86 was enacted, provided for the naturalization of aliens enlisting in the regular Army "after completion of five or more years of military service." This Act provides:

" 'Any alien enlisted or reenlisted pursuant to the provisions of this Act * * * who subsequently enters the United States, American Samoa, Swains Island, or the Canal Zone, pursuant to military orders shall, if otherwise qualified for citizenship, and after completion of five or more years of military service, if honorably discharged therefrom, be deemed to have been lawfully admitted to the United States for permanent residence within the meaning of such section 329(a) [subsection (a) of this section].' " 8 U.S.C.A. note following § 1440.

So an alien who enlisted in the United States Army while in Europe and who entered the United States pursuant to

1. Now 8 U.S.C.A. § 1440.

military orders was held not eligible for naturalization unless he had completed five years of military service. Petition of Leuthold, D.C.N.J.1953, 116 F.Supp. 777.

Where § 284 provides that an "entry" by a person in the Armed Forces shall not give to any person any privileges or rights not specifically granted by the Immigration and Nationality Act, and where the only privileges or rights allowed to aliens for such an entry are those with respect to persons serving five years in the Armed Forces for whom such entry would be deemed to make them "lawfully admitted", it does not appear that Congress intended that an "entry" under § 284 would constitute a "lawful admission" under Public Law 86.

 Under the circumstances, I cannot conclude that the entry to the United States by petitioner in the uniform of the United States Army, before he had completed five years of service, meant that he had been "lawfully admitted" to the United States within the meaning of Public Law 86.

The motion for re-argument is denied and the petition for naturalization is denied.

So ordered.