**In re Petition for Naturalization of Lennox WATSON.**

**Misc. No. 79–49.**

United States District Court, District of Columbia.

Oct. 2, 1980.

Stanton Braverman, Washington, D. C., for petitioner.

Robert N. Herman, Gen. Atty., Immigration & Naturalization Svc., Washington, D. C., for respondent.

## MEMORANDUM OPINION

### JOHN H. PRATT, District Judge.

Lennox Watson, a native of Guyana, petitions this court for naturalization as a United States citizen. He does so on the basis of active duty service in this country's armed forces during the Vietnam conflict. The Immigration and Naturalization Service opposes his petition on the ground that his honorable discharge was on "account of alienage," and does not satisfy the statutory provision on which he now relies. For the reasons stated below, his petition is granted.

### Factual Background

Lennox Watson was born in Guyana in 1949, entered the United States on a student visa in 1969, and in 1976, while still validly within this country, he enlisted in the D. C. National Guard. In October of that year, he reported to the United States Army post at Fort Leonard Wood, Missouri, for four months of training, making him an active duty member of the United States Army. In January, 1977, he completed his training and reported back to the 104th Maintenance Company of the D. C. National Guard, an Army reserve unit. He continued to serve in his reserve capacity until January, 1978, when he was honorably discharged for his failure to produce an I–151 alien identification card, as required by National Guard regulations. Such cards are only issued to permanent resident aliens, which Watson was not. His service record, despite his discharge, was entirely satisfactory.

Although it is unclear whether at the time Watson enlisted he knew of § 329(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1440(a) (1976 ed.), he certainly

knew of it soon after, for promptly on his return from Fort Leonard Wood, he filed his petition for naturalization on the basis of that provision. The Immigration and Naturalization Service (INS) held a preliminary examination in the case in June, 1977, but took no action on his petition until ordered to do so by this court in February, 1980. In April, the INS decided to oppose the petition, arguing that Watson had not met the requirements of § 329(a).

### Statutory Construction

Section 329(a) of the Immigration and Naturalization Act of 1952 provides in relevant part that:

> Any person who, while an alien ... has served honorably in active–duty status in the military ... forces of the United States during [the] period beginning February 28, 1961, and ending on a date designated by the President by Executive Order [October 15, 1978] as the date of termination of the Vietnam hostilities ... and, who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if at the time of his enlistment ... such person shall have been in the United States ... whether or not he has been lawfully admitted to the United States for permanent residence .... *Provided, however, That no person who is or has been separated from such service on account of alienage ... shall be regarded as having served honorably or having been separated under honorable conditions for the purposes of this section.*

8 U.S.C. § 1440(a) (1976 ed.) (emphasis supplied).

It is conceded that Watson served honorably on active duty status during the relevant period.[1] Nevertheless, the INS contends that Watson's honorable discharge was "on account of alienage," making him ineligible for naturalization under § 329(a) of the Immigration and Naturalization Act.

---

1. Exec. Order No. 12081, 43 Fed.Reg. 42237 (1978) (restricting eligibility for naturalization under § 329(a) to those serving before October 15, 1978).

*Id.* Watson contends that Congress meant the language to bar naturalization only of those aliens who sought and procured their discharge on account of alienage, and not to bar naturalization of aliens honorably discharged for the convenience of the United States.

The legislative history supports Watson's contention. Congress first enacted this language in 1948, Act of June 1, 1948, ch. 360, § 1, 62 Stat. 282 (1948), as an amendment to the Nationality Act of 1940. Ch. 876, 54 Stat. 1137 (1940). The purpose of the amendment was to "make it possible for aliens who have served, or are serving honorably, in the armed forces of the United States during World War I or World War II, to acquire United States citizenship through naturalization without the necessity of going through the regular detailed process required of nonservice people." *Amending the Nationality Act of 1940, H.R. Rep. No.* 1408, 80th Cong., 2d Sess. 1 (1948). The 1948 Amendment permanently eased requirements facing alien veterans and active duty personnel who had not taken advantage of such naturalization opportunities under statutes that had expired. Congress reenacted the language as § 329(a) of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1440(a) (1976 ed.), and permanently extended its coverage to Korean War era personnel in 1961, Act of Sept. 26, 1961, Pub.L. No. 87–301, §§ 7, 8, 75 Stat. 653–54 (1961), and to Vietnam era personnel in 1968. Act of Oct. 24, 1968, Pub.L. No. 90–633, 82 Stat. 1343–44 (1968).

The language "separated from the service on account of alienage" was evidently added to deal with a special situation created by the draft laws in force at the time. Under the statute as it stood in World War II, aliens within the United States were subject to the draft unless they declared their intention not to seek United States citizenship. This declaration permanently barred them from seeking naturalization. *See, e. g., Benzian v. Godwin,* 168 F.2d 952 (2d Cir.), *cert. denied,* 335 U.S. 886, 69 S.Ct. 235, 93 L.Ed. 425 (1948). Under some circumstances, aliens already in the United States armed forces could petition for discharge on account of alienage. Discharge on these grounds permanently disqualified the petitioning alien from United States citizenship. 8 U.S.C. § 1426(a) (1976 ed.).

Congress clearly intended the language "on account of alienage" to bar naturalization under § 329(a) to aliens who successfully petitioned for discharge. Congress also made clear that its intention was *not* to bar naturalization of aliens honorably discharged for the convenience of the government. Congress did so in 1953, by amending the Immigration and Naturalization Act of 1952 to extend easier naturalization to aliens serving in the armed forces during the Korean War. Act of June 30, 1953, ch. 162, 67 Stat. 108 (1953).

The 1953 amendments contained the same naturalization disqualifications as § 329(a) of the 1952 Act. First, those aliens discharged "under other than honorable conditions" could not be naturalized; second, conscientious objectors who refused to perform any duty or refused to wear the uniform were forbidden to be naturalized; and third, those aliens discharged "pursuant to an application for discharge made by him on the ground that he is an alien" were barred from naturalization. Act of June 30, 1953, ch. 162, § 3, 67 Stat. 110 (1953). These disqualifications track those in § 329(a); indeed, the language concerning conscientious objectors and discharge under other than honorable conditions is substantially identical.

The initial House version of the 1953 amendment tracked § 329(a)'s disqualifications identically. Deputy Attorney General William Rogers wrote the House Judiciary Committee, pointing out that the language "discharge on account of alienage," might be interpreted as an exception to § 315 of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1426(a) (1976 ed.), which permanently barred naturalization of aliens who sought and received discharge on account of alienage. *H.R.Rep. No.* 223, 83d Cong., 1st Sess. 2–3 (1953). In order to meet this objection, the Committee changed the language to "discharged . . . pursuant

to an application for discharge made by him on the ground that he is an alien." Act of June 30, 1953, ch. 162, § 3, 67 Stat. 110 (1953).

Congress viewed the 1953 language as clarifying, but not altering, the meaning of § 329(a). The floor statements made when the 1953 amendment was considered reflect this view.

> Mr. Walter: [I]s this not the bill that is identical with the law as it existed during the war ...?
>
> Mr. Graham: That is a correct statement.

99 Cong.Rec. 2639 (1953). Representative Walter was Chairman of the House Subcommittee on Immigration and Nationality and was prime sponsor and floor manager of the Immigration and Naturalization Act of 1952. Representative Graham chaired the subcommittee in 1953, and was the sponsor of the 1953 amendment.

Representative Keating, who sponsored the 1948 statute that first contained the language of § 329(a), agreed that the purpose and effect of the 1953 and 1948 statutes were identical.

> Mr. Keating: I introduced a bill in the 80th Congress to facilitate the naturalization of our brothers of foreign birth who served in the military or naval forces of our country in World War II. This bill became law in June 1948 .... No one, I believe, will challenge the contention that *these same privileges should be extended participants and veterans of the Korean conflict.*
>
> . . . . .
>
> To those who, out of devotion to the country of their adoption *waived their exemption from military service*, this bill provides a national policy of facilitating their conversion from the status of alien to that of citizen of the country for which they have evidenced such patriotic devotion.

99 Cong.Rec. 2639 (emphasis supplied).

Thus the sponsors of the 1948, 1952, and 1953 statutes viewed them as identical in purpose and operation; the subcommittee chairmen shared this view.

The Senate evidently agreed. In his floor statement concerning the 1953 amendment, Senator Watkins, the bill's floor manager, reminded the Senate that aliens were subject to the draft, noted one minor change made to conform the House bill more closely to the draft laws, and stated that the bill was modeled on legislation governing naturalization of World War II veterans. 99 Cong.Rec. 6621 (1953).

■ The 1953 amendment lapsed in 1955. Act of June 30, 1953, ch. 162, § 1, 67 Stat. 109 (1953). In 1961 and 1968, however, Congress extended permanent naturalization benefits to Korean War and Vietnam War veterans. Act of Sept. 26, 1961, Pub.L. No. 87–301, §§ 7, 8, 75 Stat. 653–54 (1961); Act of Oct. 24, 1968, Pub.L. No. 90–633, 82 Stat. 1343–44 (1968). These amendments only changed the eligibility dates.[2] Nothing in the statutory language or legislative history shows any intention to change the meaning of § 329(a). The House Committee Report on the 1961 amendments states that "[t]his legislation is fully consistent with the policy previously expressed by the Congress in the enactment of several statutes enabling naturalization [of] alien members of the Armed Forces of the United States," including the 1952 and 1953 statutes. H.R.Rep. No. 1086, 87th Cong., 1st Sess. 35 *reprinted in* [1961] U.S.Code, Cong. & Ad.News, pp. 2950, 2979. As aliens remained subject to the draft until 1967, Universal Military Training Act of 1951, ch. 144, Title I, § 1(d), 65 Stat. 76 (1951); Selective Service Act of 1967, § 1(2), 50 U.S.C. App. § 454(a) (1976 ed.), and under certain circumstances had to elect between permanent disqualification for citizenship and service in the armed forces, Universal Military Training Act, *supra*, it would be inappropriate to infer any intention different from that expressed in the 1953 amendments. In other words, the language "discharge on

---

**2.** Congress rejected an attempt to limit these naturalization benefits to those who served in combat zones. H.Rep. No. 1968, 90th Cong.,

2d Sess. *reprinted in* [1968] U.S.Code, Cong. & Ad.News, pp. 4517, 4528–29.

account of alienage" should be read to mean a discharge granted pursuant to an application made by the alien on the ground of his alienage.

This court may properly resort to the 1953 statute and its legislative history in order to determine the meaning of § 329(a). The Supreme Court has recognized repeatedly that subsequent legislation declaring the intent of an earlier statute is entitled to significant weight in determining what Congress meant to do. *See, e. g., NLRB v. Bell Aerospace, Inc.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969). The language of the 1953 statute–"discharged pursuant to an application made by him on the ground he is an alien"–together with the legislative history of the statutes from 1948 to 1968, show that Congress did *not* intend that aliens discharged for the convenience of the government should be barred from seeking naturalization under § 329(a). The legislative history relied on here does not consist of isolated, post hoc rationalizations by individual members, *see, e. g., Southeastern Community College v. Davis*, 442 U.S. 397, 411 n. 11, 99 S.Ct. 2361, 2370 n. 11, 60 L.Ed.2d 980 (1979), but of consistent statements by the authors, sponsors and subcommittee chairmen responsible for the legislation. These statements were made on the floor at the time of enactment, and no member expressed any contrary view. Under these circumstances, this legislative history is entitled to dispositive weight.

The INS examiner in this case did not consider the legislative history in any detail, but instead relied on a number of unreported cases to hold that Watson's petition should be denied. These cases are neither precedent nor persuasive. All but two were decided before the present language was enacted and clarified in 1953, and involved aliens who were discharged during wartime because they were citizens of enemy or neutral nations. Two of these unreported cases were decided after § 329(a) was enacted in 1952. One decision [3] was made by a federal district court and supports Watson's position; the other was made by a Massachusetts trial court and undercuts his position. Neither court looked at the legislative history.

The examiner also relies on *United States v. Harbanuk*, 62 F.2d 759 (2d Cir. 1933). That case involved the discharge of a Russian citizen from the National Guard during World War I, a discharge ordered by the War Department on account of petitioner's alienage. Judge Manton, writing for the court, held that this was a discharge on account of alienage within the meaning of the immigration statute then in force, barring naturalization.

The *Harbanuk* case does not control here for three reasons. First, it was decided under an earlier statute before Congress made clear its contrary intent in the 1953 statute. Second, it involved the involuntary discharge of a man who was effectively an enemy alien. A United States expeditionary force was dispatched to fight in the Soviet Union shortly after his discharge. *See Abrams v. United States*, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173 (1919). Third, the court held that all doubts under the naturalization statute had to be resolved in favor of the government. *Harbanuk v. United States, supra*, at 761. As the D.C. Circuit has stated since, the present statute is not to be interpreted in an "arbitrary and niggardly fashion." *United States v. Convento*, 336 F.2d 954, 955 (D.C.Cir.1964).

Finally, the examiner suggests, without offering proof, that petitioner enlisted in order to defraud the United States into granting citizenship. The examiner points out that petitioner should not have been permitted to enlist under the National Guard regulations then in force. Petitioner answers this contention by showing that (1) he made no secret of his alien status when he enlisted or later, and (2) that he was given obsolete forms to complete at the time of his enlistment, forms which did not show that service in the National Guard

---

**3.** *Petition for Naturalization of Otto Bagai*, No. 177618 (N.D.Cal. May 19, 1970).

**150**

was restricted to United States citizens and permanent resident aliens. Improper induction or enlistment into the armed forces, with the knowledge of the armed forces, does not bar naturalization under § 329(a). *See In re Apollonio*, 128 F.Supp. 288 (S.D.N.Y.1955) (alien naturalized under 1953 statute despite illegal induction into the Army with the knowledge of the Army, and subsequent involuntary discharge on account of alienage).

*Conclusion*

For the foregoing reasons, the petition for naturalization is granted.

An order consistent with the foregoing has been entered this day.