**In re Petition for Naturalization of Valeriano Capoy ROBLE.**

**No. 145030.**

United States District Court
N. D. California, S. D.

June 28, 1962.

a native and national of the Republic of the Philippines, age thirty-nine years, who has been in the United States since July 15, 1960, when he was admitted as a temporary visitor. He filed the petition for naturalization on November 9, 1960, under the provisions of Section 324 of the Nationality Act of 1940, (54 Stat. 1149; 8 U.S.C. former Section 724 [1]), and Section 405 of the Immigration and Nationality Act of 1952, (66 Stat. 280; 8 U.S.C.A. § 1101 note). He was born on April 14, 1922, in Danao, Cebu, P. I., and enlisted in the Philippine Scouts on July 22, 1940, at Fort Mills, P. I. He was taken prisoner by the Japanese at the fall of Corregidor on May 7, 1942, and remained a prisoner of war until August, 1942, when he escaped and made his way to his brother's home in Manila, P. I. He eventually returned to the Philippine Scouts, and was honorably discharged therefrom on June 18, 1945. On June 19, 1945, he re-enlisted in the Philippine Scouts on Leyte, P. I., and served therein in an active duty status until June 30, 1946, when he was honorably discharged. His first and only entry into the United States was at Honolulu, T. H., on July 15, 1960, when he was admitted as a temporary visitor for a limited period of time, which time has been extended on various occasions.

Three questions are posed:

(1) Is his service in the Philippine Scouts to be considered as service in the United States Army as contemplated by Section 324 of the Nationality Act of 1940?

(2) Is the petitioner eligible under Section 324 of the Nationality Act of 1940?

(3) Is there any status preserved to him by Section 405 of the Immigration and Nationality Act of 1952?

First: Is his service in the Philippine Scouts to be considered as service in the United States Army as contemplated by Section 324 of the Nationality Act of 1940, (8 U.S.C. former

Milton Simmons (of Phelan & Simmons), San Francisco, Cal., for petitioner.

Daniel H. Lyons, Gen. Atty. (Nationality), San Francisco, Cal., for United States.

OLIVER, J. CARTER, District Judge.

The facts in this petition for naturalization are as follows. The petitioner is

1. Now 8 U.S.C.A. § 1435.

section 724)? The Section reads as follows:

"§ 724. Persons serving in armed forces of United States

"(a) A person, including a native-born Filipino, who has served honorably at any time in the United States Army, Navy, Marine Corps, or Coast Guard for a period or periods aggregating three years and who, if separated from such service, was separated under honorable conditions, may be naturalized without having resided, continuously immediately preceding the date of filing such person's petition, in the United States for at least five years and in the State in which the petition for naturalization is filed for at least six months, if such petition is filed while the petitioner is still in the service or within six months after the termination of such service. * * *

"(d) The petitioner shall comply with the requirements of section 709 as to continuous residence in the United States for at least five years and in the State in which the petition is filed for at least six months, immediately preceding the date of filing the petition, if the termination of such service has been more than six months preceding the date of filing the petition for naturalization, except that such service shall be considered as residence within the United States or the State."

The (a) portion of the Section requires service in the "United States Army." The United States Army is defined in 10 U.S.C. § 3062 as follows:

"(a) * * *

"(b) In general, the Army, within the Department of the Army, includes land combat and service forces and such aviation and water transport as may be organic therein. It shall be organized, trained, and equipped primarily for prompt and sustained combat incident to operations on land. It is responsible for the preparation of land forces necessary for the effective prosecution of war except as otherwise assigned and, in accordance with integrated joint mobilization plans, for the expansion of the peacetime components of the Army to meet the needs of war.

"(c) The Army consists of—

"(1) The regular Army, the Army National Guard of the United States, the Army National Guard while in the service of the United States, and the Army Reserve; and

"(2) All persons appointed or enlisted in, or conscripted into, the Army without component.

"(d) The organized peace establishment of the Army consists of all—

"(1) military organizations of the Army with their installations and supporting and auxiliary elements, including combat, training, administrative, and logistic elements; and

"(2) members of the Army, including those not assigned to units; necessary to form the basis for a complete and immediate mobilization for the national defense in the event of a national emergency."

This is the language of the present section, but the definition of subsection (c) is substantially the same as when petitioner performed his service.

In a petition for naturalization under a section similar to Section 324, Section 329 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1440), the late Judge Goodman stated that service in the Philippine Scouts is service in the "military, air, or naval forces of the United States." In the case of Petition for Naturalization of Pedro Garces and Maximino Soliven Ramos, U.S.D.C.N.D. Cal., March 1, 1961, 192 F.Supp. 439, Judge Goodman stated:

"Since Ramos has been admitted to the United States for permanent residence, he is entitled to sum-

mary naturalization pursuant to Section 329 if his service in the Philippine Scouts constituted service in 'the military, air, or naval forces of the United States.' Ramos was enlisted in the Philippine Scouts on March 30, 1946, under the provisions of Section 14 of the Act of October 6, 1945, 59 Stat. 538, 543, which provided that: 'The Secretary of War, with the approval of the Philippine Government, is hereby authorized to enlist in the Philippine Scouts, with pay and allowances authorized under existing law, 50,-000 men for service in the Philippine Islands, in the occupation of Japan and of lands now or formerly subject to Japan, and elsewhere in the Far East. Such enlistments shall be for three years unless sooner terminated and citizens of the Philippine Islands shall be eligible to volunteer for such service.'

"The Philippine Scouts were at this time a long-established unit of the Army of the United States existing by virtue of Section 36 of the Act of February 2, 1901, 31 Stat. 757, 10 U.S.C. (1946 Ed.) § 321, which authorized the President, when in his opinion conditions in the Philippine Islands justified such action, 'to enlist natives of those Islands for service in the Army, to be organized as scouts.' Miguel v. McCarl, 1934, 291 U.S. 442, 452, 54 S.Ct. 465, 78 L.Ed. 901. * * * Nothing has been called to the attention of the Court which would raise any doubt that Ramos' service in the Philippine Scouts constituted service in 'the military, air, or naval forces of the United States.' He is consequently entitled to summary naturalization pursuant to the provisions of Section 329 of the Immigration and Nationality Act of 1952."

Former Section 321 of Title 10 authorized the President to form the Philippine Scouts. This section was a successor to Section 36 of the Act of February 2, 1901, c. 193, 31 Stat. 748, 757, mentioned by Judge Goodman above. In the Miguel case, cited in Ramos, supra, the Supreme Court was concerned with an act which authorized retirement pay for enlisted men having served "either in the Army, Navy, or Marine Corps, or in all." Mr. Justice Sutherland held there that Miguel, a member of the Philippine Scouts had service in the United States Army. The government contends that there is a basic distinction between Section 329 of the Immigration and Nationality Act of 1952, which requires service in the "military, air or naval forces," and the Act now under consideration, Section 324 of the Nationality Act of 1940 which requires service in the "United States Army, Navy, Marine Corps or Coast Guard." This purported distinction seems to be a distinction without a difference. No compelling reason has been presented or shown to the Court which would require a narrower construction be given to the Nationality Act of 1940, Section 324.

In the Act of August 10, 1956, c. 1041, 70A Stat. 1, Congress revised and codified Title 10 of the United States Code relating to the Armed Forces. Section 42 of the Act, 10 U.S.C.A. § 3063 note, provided that:

"The President is authorized to form the Philippine Scouts into such branches and tactical units as he may deem expedient, within the limit of strength prescribed by law, organized similarly to those of the Regular Army."

One of the main purposes of the statutory reorganization was to maintain the status of military organizations, including the Philippine Scouts. The House Report in U.S.Code, Congressional and Administrative News, Vol. 3, 1956, states on page 4618 that laws that do not concern the Department of Defense, Army, Navy and Marine Corps, Air Force or National Guard have been excluded, and laws that do primarily concern them have been included, notwithstanding any prior classification. The House Report goes on to state that the Code is ar-

ranged on a subject basis; and to help persons consulting the law to interpret it correctly subjects have been arranged to reflect the rationale underlying the law. The Report states on page 4621:

"It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations. This fear might have some weight were this the usual kind of amendatory legislation, where it can be inferred that a change in language is intended to change substance. In a codification statute, however, the courts uphold the contrary presumption: the law is intended to remain substantively unchanged. The following authorities affirm this principle: * * * (Citing authorities).

"The presumption that the substance of the law is intended to remain unchanged is strongly buttressed by the inclusion of section 50(a), providing that 'In sections 1–49 of this Act, it is the legislative purpose to restate, without substantive change, the law replaced by those sections on the effective date of this Act.'"

Senate Report No. 2484 on H.R. 7049, U.S.Code, Congressional and Administrative News, 84th Congress, Second Session, Vol. 3, p. 4632, is substantially the same as that of the House. On page 4640 the statement is made that the object of the new titles has been to "restate existing law, not to make new law." In United States v. Sison, (Cir. 9, 1959) 272 F.2d 366, the court was considering a case under Section 324(a) of the Nationality Act of 1940. There by way of dictum the court tacitly held that the Philippine Scouts were a part of the United States Army by saying, "He served in the United States Army (Philippine Scouts) * * *" (272 F.2d 367). While it is neither controlling, nor entitled to much weight, the petitioner has presented to the Court a general order awarding him the Purple Heart on June 29, 1945. This would indicate that the United States Army, at least for certain purposes, considered petitioner to be a member of the United States Army.

From this it appears that the intention of Congress always has been to consider the Philippine Scouts as part of the Army. Certainly, former Section 321 of Title 10, cited in Ramos, supra, which authorized the President to enlist natives for service in the Army shows the intent that they be considered a part of the United States Army.

Therefore, it is the conclusion of this Court that the Philippine Scouts are a part of the Regular Army for the purposes of Section 324 of the Nationality Act of 1940 and the Act of August 16, 1940.

Second: Is the petitioner eligible under Section 324 of the Nationality Act of 1940?

The government contends that petitioner is not eligible for naturalization because his petition was not filed within six months after termination of his Army service as required by Section 324 (a), and so he must meet the general requirements for naturalization as provided by Section 324(c). The government further contends that under Section 324(d) he is permitted to count as residence in the United States only so much of the service as was performed within the five-year period immediately preceding the filing of the petition. The government relies upon the case of Petition for Naturalization of Mata, (D.C. N.D.Cal.1961) 196 F.Supp. 523, where the petitioner relied on Section 324(d). Here petitioner relies on Section 2 of the Act of August 16, 1940, 54 Stat. 788 (8 U.S.C. former Section 389a), and not on Sections 324(c) and (d).

Section 2 of the Act of August 16, 1940, provided:

"Hereafter, service in the Regular Army honorably terminated shall be credited for purposes of legal residence under the naturalization laws of the United States, regardless of

the legality or illegality of the original entry into the United States of the alien, * * * and service so credited in each case shall be considered as having been performed immediately preceding the filing of the petition for naturalization."

Petitioner contends that under this Section, the following benefits are conferred upon him:

"1. The period of his Army service should be counted as legal residence in the United States for naturalization purposes;

"2. He was relieved of the requirement of establishing legal entry;

"3. His Army service should be considered as having been performed immediately preceding the filing of a naturalization." (Petitioner's Brief in Opposition to Findings of Fact, Conclusions of Law, and Recommendation of the Designated Examiner, p. 5)

He claims that if the petition was filed more than six months after discharge the residence requirements of Section 324(c) were applicable, but military service should be considered as residence within the United States. Petitioner's claim is that he is entitled to the benefits of Section 2 of the Act of August 16, 1940, in order to qualify under Section 324. He states:

"1. He could use the period of his army service as legal residence regardless of how he might enter the United States;

"2. His army service was regarded as having been performed immediately preceding the filing of the naturalization petition." (Page 6 of Petitioner's Brief, supra).

Petitioner is correct in his contentions.

The government's main contention is that the Act of August 16, 1940, was repealed by implication by the Nationality Act of 1940, which was enacted approximately two months after the Act of Av·

gust 16, 1940. The Nationality Act of 1940, by its terms, expressly repealed the 1906 Act. The Act of August 16, 1940, was not expressly repealed by the 1940 Act, but was expressly repealed by the Immigration and Nationality Act of 1952. However, the government argues that the provisions of the Act of August 16, 1940, were rendered ineffective by the repeal of the 1906 Act. In support of this position the government cites the case of First National Bank of Biddeford v. Pittsburgh F. W. and C. T. Ry. Co., (D.C.E.D.Pa.1939) 31 F.Supp. 381. The case states, citing 59 C.J. 919:

" 'Where a later act covers the whole subject of earlier acts, embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the Legislature, and to prescribe the only rules in respect thereto, it operates as a repealer of all former statutes relating to such subject matter. The rule applies not only where the former acts are inconsistent or in conflict with the new act, but also where the former acts are not necessarily repugnant in express terms or in all respects, to the new acts.' " See also 82 C.J. S. Statutes § 293.

The gist of the government's argument is that the Act of August 16, 1940, was repealed by implication. The Court of Appeals for the Ninth Circuit specifically declined to pass upon this point. United States v. Sison, supra. In the Sison case the court stated:

"We reach such conclusion not on the contentions of the appellant that the Act of August 16, 1940, was repealed by implication, or that appellee had no 'status', rights or benefits to be preserved by the savings clause. On the contrary, in reaching such conclusion we can assume arguendo that the Act of August 16, 1940, and Section 324(d) of the Nationality Act of 1940 conferred upon appellee rights and benefits which

were preserved by the savings clause." (272 F.2d 370).

The trial court in that case, in The Matter of the Petition of Bienvenido Victorio Sison, Petition No. 130662, decided on June 30, 1958 (unreported), granted citizenship under this Act, relying on In re De Mayo's Petition, (D.C. N.D.Cal.1956), 146 F.Supp. 759. The Court of Appeals reversed Sison and overruled De Mayo on other grounds (tacking). Implicit in the District Court decisions is the holding that the 1940 Act did not repeal Section 2 of the Act of August 16, 1940. Nothing has come to the Court's attention changing De Mayo or Sison except as to the tacking problem. Therefore, the petitioner is eligible for citizenship under the Acts quoted above, *if he acquired a status so as to have it preserved by the savings clause in the 1952 Act.*

■ Third: Is there any status, right, or benefit preserved to the petitioner by Section 405 of the Immigration and Nationality Act of 1952? Section 324 and Section 2 of the Act of August 16, 1940, remained in effect until their specific repeal by the Immigration and Nationality Act of 1952, but the repealing statute in Section 405 thereof contained a specific savings clause as follows:

"Nothing contained in this Act * * *, unless otherwise specifically provided therein, shall be construed to affect * * * any status, condition, *right in process of acquisition,* act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act * * * shall take effect; but as to all such * * * statutes (sic), conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act * * * are, unless otherwise specifically provided therein, hereby continued in force and effect."

In interpreting this Section, the Supreme Court said in U. S. v. Menasche,

348 U.S. 528, at page 535, 75 S.Ct. 513, at page 517, 99 L.Ed. 615:

"The whole development of this general savings clause, its predecessors accompanying each of the recent codifications in the field of immigration and naturalization, manifests a well established congressional policy not to strip aliens of advantages gained under prior laws * * * this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress."

The government contends that the repeal of Section 324 of the Act of 1940 and Section 2 of the Act of August 16, 1940, by the 1952 Act cuts off any right of the petitioner to file under those earlier Acts. This contention is disposed of by the case of Aure v. U. S., 9 Cir., 225 F.2d 88, where the petitioner had acquired the right under the 1940 Act to be naturalized. However, he had not filed the petition prior to the repeal of the Act. The Court of Appeals for the Ninth Circuit quoted from Menasche, supra:

" 'Menasche's residence, rather than his declaration' would have been sufficient to give rise to his rights under Section 405(a) * * *. Clearly, it is the teaching of the Menasche case, and we are satisfied it was the intent of Congress, that the savings clause is not limited to cases involving affirmative action * * * but its preservation feature should be extended to all substantive rights existing at the time the statute creating the rights was repealed." (225 F.2d 88, 90)

See also Petition for Naturalization of Medalion, D.C., 173 F.Supp. 249. Aure had fulfilled his service requirement and this substituted for the residence requirement. In this respect petitioner's position is analogous to Aure. Petitioner had sufficient military service to qualify under the Nationality Act of 1940, together with Section 2 of the Act of August 16, 1940, before the 1952 Act re-

pealed those Acts. Had petitioner entered the United States at any time prior to the repeal he could have applied for naturalization under Section 324 and Section 2 of the Act of August 16, 1940, and he would have been entitled to the benefits of the combined statutes as has heretofore been indicated. This right continued under the savings clause.

Accordingly, it is ordered that the petition for naturalization be, and the same hereby is granted, and petitioner will be admitted to citizenship upon taking the required oath.