**In re Petition for Naturalization of Andres Bonifacio PASION, Petitioner.**

Misc. No. 74–69.

United States District Court, D. Hawaii.

Dec. 18, 1974.

Elmer E. Poston, Wm. F. Thompson, III, Honolulu, Hawaii, for petitioner.

Lawrence A. L. Scheftel, Designated Naturalization Examiner, U. S. Immigation & Naturalization Service, Honolulu, Hawaii, for respondent.

DECISION AND ORDER

SAMUEL P. KING, Chief Judge.

The facts of this case are not in dispute. Petitioner is a native and citizen of the Philippine Islands. He enlisted in the Philippine Scouts on April 11, 1946, served entirely in the Philippines, and was honorably discharged on January 29, 1949. Petitioner has been to the United States on two occasions as a visitor. He is presently in the United States having entered on or about August 8, 1972. On March 12, 1974, he filed a petition for naturalization under section 329 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1440 (hereinafter referred to as the 1952 Act). A preliminary ex-

amination was conducted by a Designated Naturalization Examiner pursuant to section 335 of the 1952 Act, 8 U.S.C. § 1446. The Examiner made a recommendation that the petition be denied. A final hearing has now been held on the petition (8 U.S.C. § 1447), and petitioner and the United States Immigration and Naturalization Service (INS) have filed Memoranda in support of their positions. Jurisdiction of this court is based upon section 310(a) of the 1952 Act, 8 U.S.C. § 1421(a).

Petitioner claims to have complied with all the requirements of section 329 which provides an expeditious method for naturalization of veterans, and therefore to be entitled to United States citizenship.[1] The Examiner agrees that petitioner has fully complied with all the provisions of section 329 except one (Examiner's Recommendation at 5).

■ Among other requirements which an individual must meet to qualify for naturalization under section 329 is the requirement that the individual *either* at the time of enlistment be in the United States, the Canal Zone, American Samoa, or Swains Island, *or* at any time subsequent to enlistment be "lawfully admitted to the United States for permanent residence."[2] Petitioner, having enlisted and served in the Philippines, does not qualify for naturalization unless he has been lawfully admitted to the United States for permanent residence.

Petitioner argues that he acquired the "status" of being lawfully admitted for permanent residence under section 2 of the Act of August 16, 1940, ch. 684, 54 Stat. 788 (hereinafter referred to as the August 16, 1940 Act). Section 2 provides:

> Hereafter service in the Regular Army honorably terminated shall be credited for the purpose of legal residence under the naturalization laws of the United States, regardless of the legality or illegality of the original entry into the United States of the alien, the certificate of honorable termination of such service or duly authenticated copy thereof made by a naturalization examiner of the Immigration and Naturalization Service being accepted in lieu of the certificate from the Department of [Justice (see, 54 Stat. 1238)] . . . of the alien's arrival in the United States required by the naturalization laws; and service so credited in each case shall be considered as having been performed immediately preceding the filing of the petition for naturalization.

The certificate referred to in section 2 is a Certificate of Arrival which under the Nationality Act of 1940, ch. 876, §§ 332(a)(20) and 332(c), 54 Stat. 1155–1156 (hereinafter referred to as the October 14, 1940 Act), was issued by the INS and demonstrated one's lawful admission for permanent residence. Since section 2 provides that the certificate of honorable termination from service is to be accepted in lieu of the Certificate of Arrival, petitioner claims

---

1. Section 329 reads in part:

(a) Any person who, while an alien or a noncitizen national of the United States, has served honorably in an active-duty status in the military, air, or naval forces of the United States during . . . a period beginning September 1, 1939, and ending December 31, 1946, . . . and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) have been lawfully admitted to the United States for permanent residence. . . .

2. The meaning of lawfully admitted to the United States for permanent residence is defined in section 101(a)(20) of the 1952 Act, 8 U.S.C. § 1101(a)(20) as follows:

The term "lawfully admitted for permanent residence" means the *status* of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. (emphasis added).

to have satisfied the requirement of being lawfully admitted for permanent residence.

While the 1952 Act expressly repealed all other prior immigration laws (section 403(b), 8 U.S.C. § 1101 note), it also contained a saving clause (section 405(a), 8 U.S.C. § 1101 note) which provides in part:

> Nothing contained in this Act [this chapter], unless otherwise specifically provided therein, shall be construed to affect the validity of . . . any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act [this chapter] shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [so in original; probably should read "statuses"] conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act [this chapter] are, unless otherwise specifically provided therein, hereby continued in force and effect. . . .

This saving clause, petitioner argues, preserved his acquired status for the purposes of section 329 of the 1952 Act.

It has been held on facts similar to those of this case that under section 2 of the August 16, 1940 Act and section 324 of the October 14, 1940 Act one had a right to naturalization and that that right continued under the saving clause. In re Roble, 207 F.Supp. 384 (N.D.Cal.1962). However, after the petitioner in the Roble case had filed his petition for naturalization, the 1952 Act was amended by adding section 310 (e), 8 U.S.C. § 1421(e). This section provides:

> Notwithstanding the provisions of section 405(a), any petition for naturalization filed on or after September 26, 1961, shall be heard and determined in accordance with the requirements of this subchapter.

Both petitioner and the INS agree that because of section 310(e) this petition must be determined under section 329 of the 1952 Act, and thus petitioner does not rely on section 324 of the October 14, 1940 Act as did the petitioner in Roble. Indeed, arguably petitioner would disqualify himself if he attempted to do so irrespective of section 310(e) because section 324 appears to require five years United States residency and allows the military time served to count towards that requirement. See, United States v. Sison, 272 F.2d 366 (9th Cir. 1959). Section 329, however, does away with this requirement. Petitioner here did not have five years service with the Philippine Scouts.

Thus, petitioner argues that he gained the status of having been lawfully admitted for permanent residence by virtue of section 2 of the August 16, 1940 Act; that this status is continuing under section 405(a) of the 1952 Act; and, since he also meets all the other requirements of section 329 of the 1952 Act, that he is entitled to United States citizenship.

The INS agrees with petitioner's position except as to two points. It claims that section 310(e) clearly eliminates any preservation of rights or statuses acquired under prior laws and that the principle laid down by the court in the Roble case has been overruled by United States Immigration and Naturalization Service v. Hibi, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973).

For the reasons stated below, the court agrees with petitioner and grants his petition for naturalization.

The meaning of section 310(e) of the 1952 Act is at best ambiguous. It is clear from its language that it has some effect on section 405(a). Nevertheless, as petitioner points out, if Congress wished to repeal section 405(a) it could have done so in unambiguous terms. The purpose and therefore the effect of the subsection as intended by Congress can be clarified by reference to its legislative history. The House

Committee on the Judiciary reported the purpose of the amendment as follows:

The purpose of this amendment is to overcome interpretations placed upon the savings clause (Section 405) of the Immigration and Nationality Act (United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513 [99 L.Ed. 615] (1955); United States v. Wolff, 270 F.2d 422, 3d Cir., cert. den. 362 U.S. 928 [80 S.Ct. 753, 4 L.Ed.2d 746] (1960); Medalion v. United States, 279 F.2d 162, 2d Cir. (1960)), holding in effect, that residence in the United States before December 24, 1952, was sufficient to confer naturalization rights under the Nationality Act of 1940, as amended, notwithstanding its repeal on that date by the Immigration and Nationality Act.

1961 U.S.Code Cong. and Admin.News 2981–2982. An examination of the cases cited by the Committee reveals that the concern of Congress was that aliens were being granted citizenship after the effective date of the 1952 Act even though they did not comply with the physical presence requirements of that Act. In every case cited, the petitioner had been admitted for permanent residence. The question in each case was whether the individual was required to comply with the physical presence requirements of the 1952 Act since his petition was filed after the effective date thereof. As the Committee Report states:

As a consequence [of the court interpretations], petitioners of this class are being considered eligible, 9 years after its repeal, for naturalization under the 1940 law . . . .

In this case, petitioner is exempt from the physical presence requirements under the very terms of the 1952 Act.[3] Rather than saying that complying with the prior Act entitles him to citizenship, petitioner argues that he acquired the "status" of one admitted for permanent residence as required by the 1952 Act and in all other ways complies with the Act. Section 310(e) was addressed to a different situation than that of this case. Indeed, it is difficult to imagine what would be left of section 405(a) if petitioner could not assert that it preserved a status acquired under the previous Act.

This conclusion is supported by the fact that none of the cases cited by the House Committee involved section 329 or any of its predecessors. There was no reason to treat the petitioners in those cases differently from all others seeking citizenship. On the other hand, petitioner here and others who have served in the armed forces of the United States in times of the country's need have been given separate attention in our naturalization laws. Under both the 1952 Act and the 1940 Act, special treatment was accorded such aliens.[4] As the Supreme Court has said in Tak Shan Fong v. United States, 359 U.S. 102, 107, 79 S.Ct. 637, 641, 3 L.Ed.2d 662 (1959):

[We] must be receptive to the purpose implicit in legislation of this sort, to express the gratitude of the country toward aliens who render service in its armed forces in its defense.[5]

Therefore, unless it is very clear that Congress intended to do away with the saving clause entirely,[6] this court should follow the rationale of Roble.[7]

3. Section 329(b)(2) of the 1952 Act, 8 U.S. C. § 1440(b)(2).

4. In re Convento, 210 F.Supp. 265, 266 (D. D.C. 1962), aff'd, 119 U.S.App.D.C. 35, 336 F.2d 954 (1964).

5. The Court went on to say that this purpose does not warrant rationalizing to an ambiguity where none exists. Here, the effect of section 310(e) is ambiguous in light of section 405(a).

6. See, United States v. Convento, 119 U.S. App.D.C. 35, 336 F.2d 954, 955 (1964):

In the absence of the clearest indication that Congress intended to confer well-merited benefits in arbitrary and niggardly fashion, we must assume that it did not.

7. The INS has not referred the court to a case applying section 310(e) in the manner in which it contends the section applies, but at least one court has, since the effective date of the subsection, relied on the saving

890

The INS further argues, however, that the principle of the *Roble* case was overruled by *Hibi, supra*. In the *Hibi* case the INS argued that petitioner could not be granted citizenship because the filing deadline stated in the statute upon which he relied had passed long before his petition was filed *and* because section 310(e) precluded the petition. The District Court and the Court of Appeals held that the INS was estopped from alleging both arguments. 475 F.2d 7 at 9. The Supreme Court reversed, holding that the failure of the Government "to fully publicize the rights which Congress accorded by the Act of 1940, or the failure to have stationed in the Philippine Islands during all of the time those rights were available an authorized naturalization representative" could not give rise to an estoppel against the Government. 414 U.S. at 8–9, 94 S.Ct. at 22. The Court did not at any time cite section 310(e) nor did it mention the argument that section 310(e) precluded the petition. Instead, the result is clearly based upon the filing time limit established by the very statute upon which petitioner relied:

> Respondent's effort to claim naturalization under a statute which *by its terms* had expired more than 20 years before he filed his lawsuit must therefore fail. 414 U.S. at 9, 94 S.Ct. at 22. (emphasis added).

Thus, the INS's reliance upon *Hibi* is misplaced since the case dealt with estoppel to assert a filing deadline contained in the statute. There was no right or status to be "saved" by section 405(a) in that case. If the Government was not estopped to assert the deadline, Hibi failed to comply with the section upon which he sought to rely.[8]

Petitioner acquired a status under the August 16, 1940 Act. Section 405(a) preserved that status. Section 310(e) does not now take away that status and *Hibi* should not be read as removing that status. Therefore, having complied with the requirements of section 329, petitioner is entitled to have his petition granted and be admitted to citizenship upon taking the required oath. It is so ordered.

clause of section 405(a) to preserve rights conferred under the October 14, 1940 Act. C.M.K. v. Richardson, 371 F.Supp. 183 (E.D.Mich.1974).

8. In Petition of Donn, 369 F.Supp. 669 (D.N.J. 1973), the court stated that the result in the *Hibi* case "could well be interpreted

as an announcement by the Supreme Court that the naturalization laws with respect to aliens serving in American forces are to be read with considerable strictness." *Id.* at 671. However, as explained above, it does not appear to this court that the result there should be interpreted to have such a broad impact.