## TAK SHAN FONG *v.* UNITED STATES.

No. 110.   Argued February 24, 1959.—Decided March 23, 1959.

*William B. Mahoney* argued the cause and filed a brief for petitioner.

*John F. Davis* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Anderson, Beatrice Rosenberg* and *J. F. Bishop.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner, a native and citizen of China, seeks naturalization pursuant to the provisions of an Act of Congress, passed in 1953, designed to facilitate the naturalization of aliens who served in our armed forces during the gen-

eral period of the Korean hostilities.[1] The statute provides for the naturalization of aliens serving at least 90 days in the armed forces after June 24, 1950, and not later than July 1, 1955:

> "(1) having been lawfully admitted to the United States for permanent residence, or (2) having been lawfully admitted to the United States, and having been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces . . . ."

Petitioner first entered the United States on August 24, 1951, at Honolulu on a seaman's 29-day pass, and departed from the country with his ship. On January 27, 1952, petitioner again entered the United States at Newport News, where the vessel on which he was employed was then touching. The exact circumstances of this entry are disputed, but it is conceded on all sides that it was unlawful. Petitioner did not depart with his ship, but remained within the United States. He was apprehended in June 1952 and deportation proceedings were commenced against him; but the proceedings were halted when it became known that on May 4, 1953, he had been inducted into the Army. He served honorably until his discharge on May 3, 1955, and on December 22, 1955, instituted the present proceedings based on the statute to which we have referred.[2] The District Court granted his petition for naturalization, but the Court of Appeals reversed. 254 F. 2d 4. We granted certiorari. 358 U. S. 811.

Congress has shown varying degrees of liberality in granting special naturalization rights to aliens serving in our armed forces at various times. For example, the

---

[1] § 1 of the Act of June 30, 1953, c. 162, 67 Stat. 108, 8 U. S. C. (Supp. V) § 1440a.

[2] The statute requires that petitions for naturalization filed under it be filed not later than December 31, 1955.

Immigration and Nationality Act of 1952 allows such rights to those having served honorably in World War I or during the period September 1, 1939, to December 31, 1946, if at the time of their induction or enlistment they simply were physically present in the United States or certain named outlying territories.[3]   On the other hand, that Act's general provision allowing aliens with three years' armed service at any time to be naturalized free of certain residence requirements[4] provides no exemption from the requirement that they have been "lawfully admitted to the United States for permanent residence."[5] We must examine the extent to which Congress has made these rights available here, in this statute aimed at service during the Korean hostilities.   Petitioner contends that, under clause (2), one year's presence in the United States at the time of induction entitles him to them if at any time theretofore he had been lawfully admitted to the country.   He relies on his lawful admittance and brief stay in the country at Honolulu in 1951 as providing this. The Government contends that the lawful admittance must have been the means whereby the alien commenced his year's presence in the country, and that accordingly the lawful Honolulu entry is irrelevant.   We are in agreement with the Government's view of the statute.

While perhaps a verbal construction of the statute can be made as not implying any connection between the required lawful admittance and the required year's presence, we think the only fair and natural construction of the words is that one is implied.   As distinguished from its policy toward World War I and II service, Congress was not prepared to allow special naturalization

---

[3] § 329, 66 Stat. 250, 8 U. S. C. § 1440.   See also note 7, *infra*.

[4] § 328, 66 Stat. 249, 8 U. S. C. § 1439.

[5] § 318, 66 Stat. 244, 8 U. S. C. § 1429.   The 1953 Act explicitly exempts those who can qualify under its terms from the requirements of § 318.

rights to aliens serving at the time of Korea simply if they entered the service while physically, for any length of time and lawfully or unlawfully, within the United States. Nor was it prepared to make one year's residence alone the condition; it also imposed the requirement of lawful admittance. It would not be a meaningful requirement to attribute to Congress if it could have been satisfied by a lawful entry, followed by departure, before and unconnected with the commencement of the year's presence. We believe that Congress must have been referring to the last entry before the year's presence—the entry into the country which provided the occasion for that presence. Cf. *Bonetti* v. *Rogers*, 356 U. S. 691. Under this construction, clause (2) of the statute requires a "single period" of residence commencing with a lawful admission and continuing for a year thereafter. It does not demand that the alien's continuing status in the country be lawful, but it does make that requirement of the entry which gives rise to his presence.

Such legislative history as is relevant to the meaning of the statute bears out this construction. The Act was passed in the First Session of the Eighty-third Congress, and when the bill that became the Act was first brought to the House floor after Committee consideration during that Session,[6] the member reporting it stated that it was identical with the law that existed during "the war" (presumably World War II)[7] with the exception that

[6] There had been activity within Congress in this direction during the Eighty-second Congress, but no bill was passed. See H. R. Rep. No. 1176, 82d Cong., 1st Sess.; S. Rep. No. 1713, 82d Cong., 2d Sess.

[7] The statute actually in effect during World War II was § 701 of the Nationality Act of 1940, added by Title X of the Second War Powers Act, 1942, 56 Stat. 182. The requirement of lawful admittance, at first made by the Act, was substantially dispensed with through an amendment by the Act of December 22, 1944, c. 662, 58 Stat. 886.

it applied only to aliens who were "legally and lawfully in the United' States." 99 Cong. Rec. 2639. This must be read in the context of the House Committee Report's statement that "lawful admission" was a prerequisite to the bill's benefits, and its explanation that it had rejected a proposal of the Justice Department that would have required the presence of the alien at the time of entrance into the armed services also be lawful. The Committee had felt that the alien should not be saddled with "the technicalities involved in connection with the continuance of such [lawful] status at the time of entering the Armed Forces." H. R. Rep. No. 223, 83d Cong., 1st Sess., p. 4. The House bill required only lawful admission and physical presence at the time of entering the service;[8] later the Senate inserted the one year's presence requirement,[9] but we do not perceive any change in the distinction we have set forth above. To us, this indicates that Congress desired that the alien's presence in the country be the consequence of a lawful admission, even though the continuance of his stay be beyond the terms on which he was admitted. It is true that the present statute does not in terms state the nexus between admission and the required period of residence as positively as did a 1932 alien veterans' statute which petitioner urges on us for comparison, and which required that the alien have "resided continuously within the United States

---

[8] The bill then extended to "any person, not a citizen, who, after June 24, 1950, and not later than July 1, 1955, has actively served or actively serves, honorably, in the Armed Forces of the United States for a period or periods totaling not less than 30 days- and who, having been lawfully admitted to the United States . . . shall have been at the time of entering the Armed Forces within such area . . . ." See 99 Cong. Rec. 2639.

[9] See S. Rep. No. 378, 83d Cong., 1st Sess., p. 4. The alternative now found in clause (1), admission for permanent residence, was also introduced in the Senate.

for at least two years, in pursuance of a legal admission for permanent residence." [10] § 1, Act of May 25, 1932, c. 203, 47 Stat. 165. But, as we have explained, Congress did not wish this Act to imply a requirement that the continuance of the alien's presence here be lawful, and such language might have done so. We find the language it in fact used was apt to draw the lines we have indicated above.

Of course, we must be receptive to the purpose implicit in legislation of this sort, to express the gratitude of the country toward aliens who render service in its armed forces in its defense. But that does not warrant our rationalizing to an ambiguity where fairly considered none exists, or extending the generosity of the legislation past the limits to which Congress was willing to go. The service petitioner has rendered this country might inspire legislative relief in his behalf; but here we take the statute as it stands, and under it the judgment of the Court of Appeals was correct.

*Affirmed.*

THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE DOUGLAS dissent.

---

[10] The provision relates to the period before filing the naturalization petition, rather than before entrance into the service, but this difference does not affect the comparison asserted.