**UNITED STATES of America,**
**Appellant,**

v.

**Itzhak ARONOVICI, Appellee.**

**No. 13218.**

United States Court of Appeals Seventh Circuit.

April 26, 1961.

[black redaction bar]

James P. O'Brien, U. S. Atty., Elmer M. Walsh, Jr., Asst. U. S. Atty., Chicago, Ill., R. Tieken, U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellant.

John M. Weiner, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Itzhak Aronovici, petitioner-appellee, filed a petition for naturalization in the District Court seeking the benefit of the special naturalization privilege granted by Section 328 of the Immigration and Nationality Act, 8 U.S.C.A. § 1439. The Examiner found that petitioner failed to establish three years of honorable service in the armed forces of the United States and recommended that the petition be denied. The District Court overruled the Examiner's objections, granted the petition for naturalization and petitioner took the oath of allegiance to the United States. The Government appeals.

The sole contested issue presented by the Government's appeal is whether training duty in the United States Army Reserve satisfies the requirement of 8 U.S.C.A. § 1439(a) that an alien petitioning for naturalization thereunder shall have "served honorably at any time in the armed forces of the United States for a period or periods aggregating three years * * *".

Petitioner is a single male native of Romania, thirty years of age. He entered the United States in January, 1955 as a visitor from Israel. In October, 1955 his status was changed to that of a non-immigrant student and while in that status he was drafted into the United States Army on February 2, 1956. He served overseas from July 17, 1956 to January 7, 1958 and was honorably released from active military service on January 13, 1958, as a Specialist Third Class. On August 27, 1958, Private Law 85–706, 72 Stat. A185, granted petitioner permanent residence in the United States. Except during his twenty-three months of active military service, petitioner has resided in Chicago since 1955.

When released from active duty petitioner was transferred to the United States Army Reserve and he must remain in that status until February, 1962. He is required to attend weekly drills of two and one-half to three hours and to serve one nine-hour day each month. He is subject to two weeks of annual active duty training. Petitioner's Reserve Company Commander, in a communication addressed to the Bureau of Immigration, advised that a review of petitioner's personnel file "shows an outstanding record of duty and superior performance during his active duty with the United States Army, according to letters of commendation from previous superiors" and that petitioner "has shown personal devotion to duty and character throughout his army career and receives our unqualified recommendation for citizenship based on performance with our unit and his record of past performance with other units".

Petitioner served in the armed forces on active duty for twenty-three months and at the time he filed his petition had served two years of the four year period he is required to serve in the United States Army Reserve. No question is raised as to the honorable character of the petitioner's service, his good moral character, attachment to the principles of the Constitution of the United States, or favorable disposition toward the good order and happiness of the United States—all four of which elements must be proved as additional prerequisites to naturalization under § 1439. The Government contends the derivation of § 1439 indicates that "active duty" service is required thereunder and its provision (§ 1439(e)) that the existence of the four elements referred to above be proved by military records, in so far as serv-

ice periods are concerned, evinces Congressional intent that "active duty" service was intended.

We have carefully considered the arguments advanced by the Government in support of its theory that the derivation of § 1439 and its evidentiary requirements as related to service periods require that "served" be construed as active duty service. In our opinion these arguments are inconclusive. Moreover, they overlook the fact that the language of the prior sections was addressed to the organizational structure of the armed forces as it then existed.

Under current law and regulations petitioner's United States Army Reserve service equates "active duty" service for the purpose of fulfilling his total six year military service obligation. We find no persuasive reason which suggests that the Congress did not intend such Reserve service to qualify for the purpose of satisfying the requirement of § 1439. The suggestion that United States Army Reserve service does not afford such opportunity for close observation and subjection to strict discipline as would qualify the military records of such service as "equal to if not superior [in evidentiary value] to the usual testimony of friendly witnesses" [1] is not convincing as a compelling reason to limit the application of § 1439 to active duty service.

The arguments advanced by the Government are somewhat different from the contentions considered in United States v. Rosner, 1 Cir., 249 F.2d 49, in which the identical issue here involved was decided adversely to the Government. We are in agreement with the view expressed and conclusion reached in Rosner. The differences between § 1439 and those sections which expressly require "active" service were there pointed out (pages 51–52) as follows:

"Congress has expressly inserted the words 'active' or 'actively' in reference to the type of military service required in two sections of the statute dealing with the naturalization of aliens who have served honorably in the armed forces. By its omission of any reference to active service, there is a strong inference that Congress meant the type of military service, required under Sec. 328 to be somewhat different than that required by Sec. 329 and 8 U.S.C.A. § 1440a. Moreover, Sec. 328 requires that the petitioner must have been lawfully admitted for permanent residence. Sec. 329 allows aliens to be naturalized even though they may have entered the United States illegally so long as they were in this country at the time of enlistment or induction. Title 8 U.S.C.A. § 1440a allowed aliens coming under its provisions to be naturalized even though they were not admitted for permanent residence providing they had been lawfully admitted and had been physically present within the United States for a single period of at least one year at the time of entering the armed forces. It would not be illogical to contend that Congress intended to require higher standards of military service in Sec. 329 and 8 U.S.C.A. § 1440a in return for allowing aliens who had not been lawfully admitted to the United States for permanent residence the advantage of practically immediate citizenship under the provisions of Sec. 329 and only a one year period of residence under 8 U.S.C.A. § 1440a.

"Sec. 328, on the other hand, requires the alien to have been admitted to this country for permanent residence. It further requires a period of three years in military service, unlike Sec. 329, which sets no minimum length on the period of time served during World War I or

---

[1] Explanatory comment accompanying proposal that individual's qualifications for citizenship during periods served in armed forces be proved by military records. Hearings before Committee on Immigration and Naturalization, House Committee Print, 76th Congress, 1st Sess., printed in 1939 by the Government Printing Office, page 452.

World War II and 8 U.S.C.A. § 1440a, which requires a period of ninety days in active military service."

We do not find the additional arguments here advanced by the Government a sufficient basis for reaching a result different from that reached in Rosner. The judgment order of the District Court is affirmed.

Affirmed.