### Petition for NATURALIZATION OF Valentin VILLARIN.

### No. 140966.

United States District Court
N. D. California, S. D.
July 7, 1961.

Phelan & Simmons, Milton T. Simmons, San Francisco, Cal., for petitioner.

Daniel H. Lyons, General Atty. (Nationality) for U. S. Immigration & Naturalization Service, San Francisco, Cal., for the United States.

OLIVER J. CARTER, District Judge.

Petitioner is a native and citizen of the Republic of the Philippines. He was admitted to the United States on October 2, 1959, as a temporary visitor under the provisions of Section 101(a) (15) (B) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101(a) (15) (B). He has never been admitted to the United States for permanent residence; however, petitioner urges that his honorable service in the United States Navy qualifies him for naturalization.

Petitioner's principal argument is that he meets the conditions of Section 329 of the Immigration and Nationality Act of 1952, 66 Stat. 250, 8 U.S.C.A. § 1440; and, secondarily, urges that he fulfills the conditions of Section 324 of the Nationality Act of 1940, 54 Stat. 1149, 8 U.S.C. (1940 ed.) § 724 [1] as made applicable by the general savings clause in the Immigration and Nationality Act of 1952, § 405, 66 Stat. 280, 8 U.S.C.A. § 1101 note. As to this second point, the peti-

tion would have to be denied in accordance with the reasoning set forth in the Petition for Naturalization of Mata, 591 F.Supp. 523 decided by this Court. See also Petition for Naturalization of Garces, D.C., 192 F.Supp. 439.

The apposite part of Section 329 states:

"(a) Any person who, while an alien or a non-citizen national of the United States, has served honorably in an active-duty status in the military, air, or naval forces of the United States during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, * * * *"

The record furnished by the United States Navy establishes that the petitioner enlisted in the United States Navy on the 13th day of July, 1917, at Olongapa, Philippine Islands; that he reenlisted on the 11th day of August, 1924, at Cavite, Philippine Islands; that on August 2, 1928, he reenlisted in the Navy aboard the USS Mississippi at Seattle, Washington; that he served honorably in the Navy until August 1, 1932, when he was discharged; that on October 12, 1932, he again enlisted at Cavite, Philippine Islands. This hitch carried him forward until November 11, 1937, when he was "transferred to the U. S. NFR and released from active duty honorably." He remained in this status until he was recalled to active duty by the Secretary of the Navy pursuant to statutory authority on December 16, 1941. He was subsequently released from active duty on January 25, 1947. He was placed on the permanent retired list on October 1, 1951. The only connection between petitioner's 1928 enlistment in the United States and his service during World War

1. Now 8 U.S.C.A. § 1439.

II is that the pension he received prior to his recall to active duty was based in part on the service stemming from the 1928 enlistment.

The question for resolution is whether or not petitioner's enlistment in the United States in 1928 fulfills the requirements of the statute. Admittedly, he served the United States in the United States Navy between September 1, 1939, and December 31, 1946. But, the narrower question is whether the enlistment leading to such service was in the United States, and further whether Section 329 requires some nexus between the enlistment in the United States and the alleged qualifying period of service. It is petitioner's contention that no connection is required while the government's position is contrary.

Section 329 requires that the "enlistment or induction of such person shall have been in the United States." Petitioner was recalled to active duty from an inactive status. The basis of the inactive status was based upon an honorable discharge from active duty on November 11, 1937. That active duty was based upon a voluntary enlistment at Cavite, Philippine Islands, on October 12, 1932. No enlistment or induction occurred in the United States in connection with any service in the United States Navy between 1939 and 1946, and, therefore, petitioner has not brought himself within Section 329.

Research does not disclose any judicial interpretation of Section 329 which is directly in point on the facts of this case. The cases are clear that enlistment or induction in the Philippines Islands is not enlistment or induction in "the United States, the Canal Zone, American Samoa, or Swains Island" as those terms are used in Section 329. See Petition for Naturalization of Garces, D.C.N.D.Cal. 1961, 192 F.Supp. 439, 440. In cases where enlistment took place in China and Australia prior to the alleged qualifying military service it was held that there had been no "enlistment or induction" within the scope of Section 329. See In re Petition of Lum Sum Git, D.C.E.D.

N.Y.1958, 161 F.Supp. 821, and In re Naturalization of Hai Guan Han, D.C. S.D.N.Y.1959, 178 F.Supp. 199, 200. In the latter case the court said at page 200:

"This section (329) provides that an alien who has served honorably in the armed forces of the United States may be naturalized if his enlistment shall have taken place in the United States, the Canal Zone, American Samoa or Swains Island and whether or not he was at the time lawfully admitted to the United States for permanent residence. If he had not enlisted while in one of these four places, then the petition may still be granted if at any time subsequent to enlistment or induction he shall have been lawfully admitted to the United States for permanent residence."

While these cases do not concern a situation where the applicant for citizenship had had an enlistment in the United States prior to the enlistment outside the United States which preceded his qualifying military service, they do indicate that the statute cannot be extended to cover situations which do not fall fairly within its ambit. The situation here is comparable to that in Tak Shan Fong v. United States, 359 U.S. 102, 79 S.Ct. 637, 3 L.Ed.2d 662. There the court was construing the Act of June 30, 1953, C. 162, 67 Stat. 108, 8 U.S.C.A. § 1440a, an Act with a comparable purpose, which was designed to facilitate the naturalization of aliens who served in our armed forces during the general period of the Korean conflict. That statute permitted the naturalization of aliens serving in the armed forces for at least ninety days during the prescribed period, "having been lawfully admitted to the United States, and having been physically present within the United States for a single period of at least one year at the time of entering the Armed Forces." The question there was whether the applicant had the required period of physical presence before entering the armed forces. He had had a prior legal entry but his

required period of physical presence was preceded by an illegal entry. The court held that the lawful entry must have immediately preceded the one year period of presence in order to qualify the applicant for naturalization by reason of military service saying, "We believe that Congress must have been referring to the last entry before the year's presence—the entry into the country which provided the occasion for that presence." 359 U.S. 105, 79 S.Ct. 640. Here, similarly, Congress must have been referring to the last enlistment before the service in the "military, air, or naval forces of the United States"—the enlistment which provided the occasion for that service. The one prior enlistment in the United States here can no more help the petitioner here than did the prior lawful entry help the applicant in Tak Shan Fong.

It is ordered that the petition for naturalization be, and the same is hereby denied.