**Petition for Naturalization of Rolando Reyes CONVENTO.**

**No. 34083.**

United States District Court District of Columbia.

Nov. 9, 1962.

No appearance for petitioner.

Jack Wasserman, Washington, D. C., amicus curiae.

HART, District Judge.

The petitioner makes his application for naturalization under Section 329 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1440, as amended, 75 Stat. 654 (1961), which reads as follows:

"(a) Any person who, while an alien or a noncitizen national of the United States, has served honorably in an active-duty status in the military, air, or naval forces of the United States during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946, or during a period beginning June 25, 1950, and ending July 1, 1955, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such

person shall have been lawfully admitted to the United States for permanent residence."

The petitioner originally enlisted in the United States Navy for a period of four years at Sangley Point, Cavite, Philippine Islands on July 17, 1953, and he has served continuously and honorably, in an active-duty status, from that date to the present time. The petitioner re-enlisted in the Navy in San Diego, California, on July 12, 1957. The petitioner has never been lawfully admitted to the United States for permanent residence as that phrase is defined in the Act, 8 U.S.C. § 1101(a) (20), and indeed, the petitioner has little hope for such an admission since he could be so admitted only upon inclusion within the immigration quota for the Philippines, which is very much over-subscribed. The petition for naturalization herein was filed on November 28, 1961.

■ The Court is thus faced with the problem of whether or not an alien who enlisted in the armed forces of the United States outside the geographical locations specified in the statute, who served honorably during the specified period of the Korean War, and who re-enlisted inside the United States but after the expiration of the time specified in the statute, can be naturalized under the provisions of § 1440. The Naturalization Examiner recommended that the petition for naturalization be denied.

Congress has long seen fit to reward aliens who have served in the armed forces of the United States. At least three such separate provisions can now be found in the United States Code, 8 U.S.C. §§ 1439, 1440, 1440a–1440d, and similar provisions have existed in the past.[1] These statutes, however, do not permit naturalization per se; they merely do away with certain requirements which must ordinarily be met. More particularly, with respect to § 1440, there is no age requirement, there is no requirement of a specified period of residence or physical presence in the United States, any court having naturalization jurisdiction may naturalize the petitioner regardless of his residence, and there is no fee or waiting period after filing of a petition. 8 U.S.C. § 1440(b). The statute, as quoted above, does impose alternative additional requirements beyond the basic requisite of service in the armed forces of the United States during the specified time. Since there is no question that the petitioner has served during the Korean War and since the petitioner has not been lawfully admitted to the United States for permanent residence, the question in the present case resolves itself to a consideration of the requirement in § 1440 that "(1) at the time of enlistment or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swains Island."

The entire sweep of this country's naturalization laws in this century shows a basic policy of restriction of immigration and a careful screening of those aliens who are admitted for permanent residence with the privilege of eventually becoming naturalized citizens of the United States. This screening process is most often carried out by the mechanism of an "entry" into the United States or one of its territories wherein the alien seeking admission must meet many requirements imposed by Congress and administered by the immigration authorities.[2] This same screening by means of an entry would be satisfied in the case of alien servicemen eligible under § 1440 since an alien who enlisted in the United States, the Canal Zone, Amer-

1. 40 Stat. 546 (1918), 44 Stat. 654 (1926), 47 Stat. 165 (1932), 54 Stat. 1149 (1940), 56 Stat. 182, 187 (1942), 56 Stat. 1041 (1942), 62 Stat. 282 (1948), 64 Stat. 316 (1950).

2. For a delineation of the requirements which must be met by an alien seeking to enter the United States see Gordon and Rosenfield, Immigration Law and Procedure §§ 2.29–2.50 (1959, Supp.1961).

ican Samoa, or Swains Island would have had to "enter," in the immigration sense of the word, any of those places in order to have been lawfully there.[3] However, § 1440 seems merely to require physical presence in the United States or the named outlying territories at the time of enlistment or induction. See Tak Shan Fong v. United States, 359 U. S. 102 at 104, 79 S.Ct. 637 at 639, 3 L. Ed.2d 662 (1959) (dictum). Furthermore, two decisions in the Courts of Appeal have recognized that the necessity for a lawful entry prior to the physical presence at the time of enlistment under § 1440 is an open question. Petition of Kavadias, 177 F.2d 497 (CCA 7, 1949); United States ex rel. Walther v. District Director of Immigration and Naturalization, 175 F.2d 693 (CCA 2, 1949). Therefore, Congress seems to have relaxed its usual requirement for a lawful entry or admission to the United States in the statute at issue in this case, § 1440, to this extent: it was satisfied that in most cases there would have had to have been a lawful entry in order for the alien to have been physically present in the United States or one of the enumerated possessions at the time of enlistment, and where the entry giving rise to the presence happened to be unlawful, at least the alien would have enlisted from a place where he was subject to the jurisdiction of the United States.

The petitioner was not present in the United States or one of its outlying possessions at the time of his enlistment and he had thus not entered the United States at that time. However, the petitioner later re-enlisted in San Diego, California. Presumably, although the record does not show it, the petitioner entered the United States prior to that enlistment as a member of the armed forces, since his original four-year enlistment on July 17, 1953, had not expired by the time of his re-enlistment in San Diego on July 12, 1957. Section 284 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1354, provides for the lawful entry into the United States of alien members of the armed forces and several District Courts have held that such an entry sufficiently meets the requirements of a "lawful" entry which is specifically required in the aforementioned related statute, 8 U.S.C. § 1440a.[4] Other District Courts have held that admission on a seaman's pass, as per 8 U.S.C. § 1282, similarly meets the requirements for "lawful" admission under § 1440a.[5] It is therefore difficult, in terms of the statutory purpose of § 1440 where the lesser requirement of mere physical presence at the time of enlistment is specified, to see why the petitioner herein has not duly been confronted with and survived the screening the statute was meant to impose on

---

**3.** Entry into the United States, Puerto Rico, Guam, and the Virgin Islands is governed by the Immigration and Nationality Act of 1952. See 8 U.S.C. § 1101(a) (38) where "United States" is defined to include all of these territories. Entry into the Canal Zone is governed by 35 C.F.R. part 10. American Samoa and Swains Island are defined as "outlying possessions of the United States" in 8 U.S.C. § 1101(a) (29). Entry of aliens into these islands was controlled by 22 C.F.R. 53.21–53.41 until the revocation of these regulations on November 14, 1957. 22 Fed.Reg. 9058. These regulations were originally promulgated pursuant to 22 U.S.C. §§ 223, 229, and then under 8 U.S.C. § 1185 after the Immigration and Nationality Act of

1952 was passed. 18 Fed.Reg. 489 (1953).

**4.** Petition for Naturalization of Tchakalian, 146 F.Supp. 501 (D.C.N.D.Cal., 1956); In re Echiverri, 131 F.Supp. 674 (D.C.Hawaii, 1955); Petition for Naturalization of Zaino, 131 F.Supp. 456 (D.C.S.D.N.Y., 1955). Contra, In the Matter of D'Auria, 139 F.Supp. 525 (D.C. N.J., 1956).

**5.** Petition for Naturalization of Sing, 163 F.Supp. 922 (D.C.N.D.Cal., 1958); Petition for Naturalization of Apollonio, 128 F.Supp. 288 (D.C.N.D.N.Y., 1955). See also Petition of Bozin, 70 F.Supp. 5 (D.C.S.D.Cal., 1947).

aliens eligible under its terms by his entry into the United States prior to re-enlistment.

The Report of the Designated Naturalization Examiner cited Petition for Naturalization of Villarin, 196 F.Supp. 589 (D.C.N.D.Cal., 1961), in support of the recommendation that naturalization be denied the petitioner herein. This case has since been reversed by the Ninth Circuit Court of Appeals, 307 F. 2d 774 (1962). The facts therein may shed light on the instant case. Villarin originally enlisted in the Navy in the United States in 1928. He was honorably discharged in 1932 and re-enlisted in the Philippines later that same year. He was transferred to the naval reserve in 1937, recalled to active-duty in 1941, and served until his honorable discharge in 1947. The District Court ruled that Villarin could not be naturalized since his enlistment which began his period of service during World War II was outside the United States; his previous enlistment in the United States was disconnected from that period of service and therefore was of no avail under § 1440. The Court of Appeals ruled this distinction "immaterial," and held that the first enlistment, which took place inside the United States, sufficed.

If a prior disconnected enlistment within the United States was sufficient in the Villarin case, this Court is of the opinion that the subsequent enlistment in the United States of the petitioner herein, based upon continuous service in our armed forces, suffices in the present case. Moreover, the petitioner's entry into the United States, re-enlistment in the Navy, and petition for naturalization have all been continuous with the period of service during the Korean War on which the petitioner relies. Thus are the cases of Petition for Naturalization of Hai Guan Han, 178 F.Supp. 199 (D.C. S.D.N.Y., 1959), and Petition for Natu-

ralization of Lum Sum Git, 161 F.Supp. 821 (D.C.E.D.N.Y., 1958), distinguished.

█ In summary then, the petitioner has had an entry into the United States, which the statute seems designed to require. He has also had substantial contact with and physical presence in the United States and, at the time of re-enlistment, the petitioner was in the United States. Re-enlistment is conceded to be encompassed within the term "enlistment" under the statute. It is true that this re-enlistment did not precede the period of military service relied upon but the Congressional history of § 1440 does not show that military service had to follow the enlistment rather than precede it. In fact the enlistment, service and re-enlistment in the present case are without interruption unlike the Villarin case where naturalization was granted despite an enlistment separated from the period of service relied upon by a discharge and return to civilian status. No useful purpose or Congressional policy will be served by denying the petition herein. It would result in the deportation rather than the naturalization of a worthy applicant who has served in our armed forces in time of war. Congress' basic policy of rewarding those aliens who have served the United States in time of war is clear. The statute should be liberally construed in favor of the petitioner's naturalization. Petition for Naturalization of Sing, 163 F.Supp. 922 (D.C.N.D.Cal., 1958); Petition of Augustin, 62 F.Supp. 832 (D.C.N.D. Cal., 1945). It is, therefore, ordered that the petition for naturalization be, and the same hereby is granted.

The Court wishes to express its deep appreciation to Jack Wasserman, Esquire, for his thorough, illuminating, and able brief filed in this case as Amicus Curiae at the request of the Court.