In re Petition for Naturalization of Manuel Reynoso GAVIERES, Jr.

No. 646149.

United States District Court
E. D. New York.

Dec. 4, 1964.

v. Board of Education, supra, 226 F.Supp. at p. 221.

Milton D. Kramer, General Atty., for Immigration and Naturalization Service.

Shearman & Sterling, New York City, for petitioner.

Casimir F. Sojka, New York City, amicus curiæ.

BRUCHHAUSEN, District Judge.

Manuel Reynoso Gavieres, Jr., filed a petition for admission to citizenship. A hearing was held. The Government moved for denial of the petition upon the ground that the petitioner was not a permanent resident of the United States for the number of years, prescribed by statute.

## THE UNDISPUTED FACTS

On May 15, 1933, the petitioner was born in the Philippine Islands.

On September 23, 1955 he enlisted in the United States Coast Guard in the Philippines.

On July 27, 1957, he married Virginia Santiago, a United States citizen, in Brooklyn, New York.

On February 11, 1959, to assist him to become a lawful permanent resident of the United States, his wife filed a visa application in his behalf, requesting the issuance to him of a nonquota immigrant visa.

On July 20, 1959, the visa petition was approved.

On September 22, 1961, he was honorably discharged from service in the Coast Guard.

On February 1, 1963 he was admitted to the United States for permanent residence.

On August 16, 1963, he filed his petition for admission to citizenship.

## THE PETITIONER'S CLAIM FOR CITIZENSHIP

He relies partly on 8 U.S.C. § 1430(a), also known as Section 319(a) of the Im-migration and Nationality Act, entitled "Married Persons" and partly on 8 U.S.C. § 1439 (Section 328 of the said Act), entitled "Naturalization through service in the Armed Forces." 14 U.S.C. § 1 and 37 U.S.C. § 101(4) define the Coast Guard as a military service and a branch of the armed forces.

The said Section 1430(a) requires three years continued residence in the United States immediately preceding the filing of the petition, computed from the date of lawful admission for permanent residence, provided that petitioner during that period lived in marital union with the citizen spouse also his physical presence in the United States for periods totaling at least half of that time.

As stated, he was lawfully admitted for permanent residence on February 1, 1963 and filed his petition on August 16, 1963. The period of his lawful residence was approximately six and one half months, far short of the three years, required by the said "Married Persons" statute.

The petitioner attempts to compensate for this shortage of the required residence period by resorting to a portion of Section 8 U.S.C. § 1439 (Section 328 of the said Act).

The said Section 328 provides that a petitioner may be naturalized if he has served honorably at any time in the armed forces for a period or periods of three years if the petition for naturalization is filed while the petitioner is still in the service or within six months after the termination of such service. In a case such as this where almost two years elapsed between the termination of service and the filing of the petition, the statute further provides that the petitioner must establish that he has resided in the United States continuously for five years immediately preceding the filing of the petition, computed from the date of lawful admission for permanent residence, excepting that military service within five years immediately preceding the date of filing of the petition shall be considered as residence and physical presence in the United States. Under this statute

he would be credited with residence from August 16, 1958, the date of commencement of the five year period, and September 22, 1961, the date of termination of service. Thus, the credit against the five year requirement is approximately three years, leaving a shortage of some two years.

IF THE PETITIONER HAD ACTED MORE PROMPTLY ON THE APPLICATION FOR LAWFUL ADMISSION FOR PERMANENT RESIDENCE HE WOULD BE ENTITLED TO CITIZENSHIP UNDER THE "MARRIED PERSONS" STATUTE, 8 U.S.C. § 1430(a), SECTION 319(a) OF THE ACT.

As previously stated, the said Act entitles an applicant, married to a citizen spouse, to citizenship if he has three years continued residence in the United States, immediately preceding the filing of his petition, computed from the date of lawful admission for permanent residence.

The petitioner's wife took the initial step to gain such lawful admission by filing the visa application on his behalf on February 11, 1959, requesting the issuance to her husband of a non quota immigrant visa and by securing approval of the visa petition on July 20, 1959. In order to perfect such lawful admission, the petitioner was obliged to file an application with an American Consul outside of the United States for the issuance of the visa. This he did not do until January 25, 1963 on his visit to the Philippines. The visa, dated February 1, 1963 was promptly issued. That is the date of his lawful admission into the United States, a date far too late to gain him the required three years continued residence, preceding the date of filing of the petition.

In petitioner's testimony before the Examiner, Exhibit 1, he sought to account for the delay, testifying that he was in service at the North Pole for periods, totaling more than a year; that at times when he returned, he had conferences with officials, resulting in correspondence with the United States Consul in Canada; that letters were not answered and that eventually the application was transferred to the Consul in the Philippines, where it was processed.

It is indeed unfortunate that the petitioner was beset with these matters. It is likewise unfortunate for him that Congress has not vested the Court with discretion to overlook noncompliance with the statute.

The petitioner urges that the statutes should be liberally construed, that the Courts have so acted in similar situations, citing In re Convento, D.C., 210 F.Supp. 265, affirmed D.C.Cir., July 7, 1964, 336 F.2d 954; In re Sing, D.C., 163 F.Supp. 922; United States v. Aronovici, 7 Cir., 289 F.2d 559 and United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615.

None of those cases involved the statutes under which the petitioner makes his claim. They were, however, special war veterans statutes and the petitioner relies upon them on the theory that the courts have favored veterans in interpreting the statutes, relaxing admission requirements for the individuals coming within that category.

The petition in Convento, supra, was filed under 8 U.S.C. § 1440 (Section 329 of the Act) a special statute, favoring veterans of World Wars I and II and of the Korean engagement. A requirement of that statute was that at the time of enlistment the petitioner must be in the United States regardless of whether or not he had been lawfully admitted for permanent residence. In 1953 Convento enlisted in the Philippines and in July 1957, re-enlisted in the United States. The lower Court stated:

"Re-enlistment is conceded to be encompassed within the term 'enlistment' under the statute. It is true that this re-enlistment did not precede the period of military service relied upon but the Congressional history of § 1440 does not show that military service had to follow the enlistment rather than precede it."

In affirming, the Circuit Court wrote: "It is not simply a matter of reward; it is also a recognition that no further demonstration of attachment to this country and its ideals is necessary. Since (alien's) case is within this congressional aim, the statute should not be read restrictively to bar him unless it is expressly commanded."

In Matter of Sing, supra, the petitioner sought admission under 8 U.S.C. § 1440a, providing that a veteran serving at least ninety days prior to July 1, 1955, having been lawfully admitted to the United States and having been physically present therein for a single period of at least one year at the time of entering the armed services, was entitled to naturalization. The petitioner was physically present in the United States for more than one year following his lawful admission into the United States although such presence did not immediately precede the date of entry. There is no mention in the statute that the one year period shall immediately precede the date of such entry. The Court approved the petition.

In Aronovici, supra, it was held that training in the Reserve was equivalent to service in the armed forces.

In United States v. Menasche, supra, the petitioner had complied with all of the requirements of the statute under which he sought citizenship excepting that he filed his declaration of intention before the statute went into effect. The Court held that a saving clause remedied that situation.

In none of the aforesaid cases cited by petitioner did a Court rule that a petitioner could prevail by complying with part of an independent statute and disregarding the remainder. In fact, in Menasche, supra, the United States Supreme Court stated that "it is our duty 'to give effect, if possible, to every clause and word of a statute.' "

## THE GOVERNMENT'S CONTENTION

The Government states that the petitioner has not established the period of residence, required by either of the statutes upon which he relies. Its contention must be sustained unless the liberality of construction of the statutes in the manner advocated by him be upheld.

The Government cites the case of Tak Shan Fong v. United States, 359 U.S. 102, 79 S.Ct. 637, 3 L.Ed.2d 662. It appears therein that the petitioner, Fong, although never lawfully admitted into the United States enlisted there on May 4, 1953, was discharged on May 3, 1955 and shortly thereafter filed his petition for naturalization under 8 U.S.C. § 1440a, the same statute as was invoked in the Sing case, supra. It required physical presence in the United States for a single period of a least one year at the time of entering the armed forces. The Court affirmed the judgment of the lower Court, denying the application, holding that the statute required that the entry into the United States, leading to the alien's physical presence for the period preceding his entry into the service must be a lawful entry.

At page 107, 79 S.Ct. at page 641, in Fong, supra, the Supreme Court expressed its concern for aliens, serving in the armed forces, but pointed out that its function was to construe the statute, not to reframe it to fit the facts presented. The Court stated:

"Of course, we must be receptive to the purpose implicit in legislation of this sort, to express the gratitude of the country toward aliens who render service in its armed forces in its defense. But that does not warrant our rationalizing to an ambiguity where fairly considered none exists, or extending the generosity of the legislation past the limits to which Congress was willing to go. The service petitioner has rendered this country might inspire legislative relief in his behalf; but here we take the statute as it stands, and under it the judgment of the Court of Appeals [directing dismissal of the petition] was correct."

## IN CONCLUSION

The petitioner is in a strong equitable position. He served honorably in the United States Coast Guard for a period of six years, terminating on September 22, 1961. He resides in Brooklyn with his wife, a United States citizen, and four minor children. For the past three years he has been employed as a guard by the Pinkerton National Detective Agency. He has applied for a position on the New York City Police Force and taken the necessary examination for appointment. Citizenship of an applicant is required. If admission to citizenship is denied or unreasonably delayed, he will have passed the age limit for appointment.

It shocks the conscience of the Court to be compelled to deny the petition because of the delay in processing the application for the issuance of a visa. His explanation for the delay is entirely credible. If the Court had the power to excuse the omission, it would hasten to do so. This seems a worthy case for presentation to Congress for special legislative relief.

The Court reluctantly concludes that the petition must be denied.