**Petition for Naturalization of Yiu-Nam DONN.**

**No. 133317.**

United States District Court,
D. New Jersey.

Nov. 14, 1973.

Vincent J. Agresti, Newark, N. J., and Casimir F. Sojka, New York City, for petitioner.

Sydney B. Rosenberg, Newark, N. J., for the Immigration and Naturalization Service.

## OPINION

COOLAHAN, District Judge:

Yiu-Nam Donn, born in Canton, China, 38 years ago and now a resident of Passaic, New Jersey, petitions this Court for naturalization under 8 U.S.C. § 1421. Petitioner first entered the United States in 1952 and, as the son of a supposed United States citizen father, was issued a certificate of citizenship [1]

1. Pursuant to section 1993 of the United States Revised Statutes, as amended by section 1 of the Act of May 24, 1934 (48 Stat. 797).

in 1955. Between April 18, 1958 and April 15, 1960 petitioner was on active duty with the United States Army and served in Korea for one year of that period. From April 16, 1960 until March 31, 1964 petitioner was in the Army standby reserves. All petitioner's military duties were performed honorably. The reserve commitment did not entail positive duties on the part of petitioner; he was, however, subject to active call-up at any time. Except for his year with the Army in Korea, petitioner has resided continuously in the United States. Petitioner is married to a permanent resident alien and has two children born in the United States.

On February 4, 1972 petitioner agreed to the cancellation of his certificate of citizenship by the United States Immigration and Naturalization Service office in Newark, New Jersey. Petitioner admitted that his father was not a United States citizen but was a citizen of China, and thus the certificate was invalid. Petitioner avers that he voluntarily brought his status to the attention of the Immigration and Naturalization Service after he discovered from a grandfather that petitioner's father was not a citizen.

Yiu-Nam Donn has now petitioned for naturalization under section 329(a) of the Immigration and Nationality Act, 8 U.S.C. § 1440, which provides:

> "Any person who, while an alien or a non-citizen national of the United States, has served honorably in an active-duty status in the military, air, or naval forces of the United States during . . . a period beginning June 25, 1950, and ending July 1, 1955, or during a period beginning February 28, 1961, and ending on a date designated by the President by Executive order as of the termination of the Vietnam hostilities . . . may be naturalized as provided in this section. . . ."[2]

Whereas it is readily ascertainable that petitioner's period on active duty did not fall within the periods designated by the section, petitioner claims eligibility under two theories: (1) Petitioner's tour in Korea was in an area of actual hostility, and the dates of the Korean War are among those set out in the section (June 25, 1950–July 1, 1955). (2) Petitioner's period on standby reserve was within the time specified by the section, subsequent to February 28, 1961, and this status should qualify him under the statute.

In support of the petition, several cases are cited in which the courts have granted naturalization petitions through a liberal construction of the various provisions allowing citizenship rights to aliens who have served in United States armed forces. United States v. Convento, 119 U.S.App.D.C. 35, 336 F.2d 954 (1964); Villarin v. United States, 307 F.2d 774 (9th Cir. 1962); United States v. Rosner, 249 F.2d 49 (1st Cir. 1957); In re Gabriel, 319 F.Supp. 1312 (D.P.R.1970); In re Todorov, 253 F. Supp. 977 (N.D.Ill.1966); Petition of Sing, 163 F.Supp. 922 (N.D.Calif.1958).

The Government would have this Court adopt the recommendation made by Designated Naturalization Examiner Nathan W. Gordon on October 9, 1973, holding that section 329(a) does not allow petitioner the status of citizen. The Examiner, in so recommending, cites the definition of "active duty" (a phrase used in section 329(a)) given in the Armed Forces Act, 10 U.S.C. § 101(22), as being "fulltime duty in the active military service of the United States." Petitioner's service subsequent to February 28, 1961 did not involve such full time active duty. The Government, lastly, calls to the Court's attention the congressional policy of awarding citizenship under section 329(a) to those aliens who have served during wartime, and it is pointed out that petitioner's service was in peacetime.

This Court is fully aware of the strength of the Government's argument here. Under the strict face language of

---

2. The section goes on to describe conditions which petitioner has incontestably met.

section 329(a), this Court could easily decide in the Government's favor. Petitioner's position is further burdened in that one court has held periods on inactive duty training in the National Guard not to count for section 329(a) eligibility, In re Ognistoff's Petition, 146 F. Supp. 205 (N.D.Cal.1956), and the United States Supreme Court has recently denied a naturalization petition of a Philippine citizen who had served actively in a branch of the United States Army during World War II, United States Immig. & Naturalization Service v. Hibi, 414 U.S. 5, 94 S.Ct. 19, 38 L. Ed.2d 7 (1973). In *Hibi*, the former serviceman was found to be barred from citizenship though he had been in an enemy prisoner-of-war camp as a United States combatant during the war. Such a result could well be interpreted as an announcement by the Supreme Court that the naturalization laws with respect to aliens serving in American forces are to be read with considerable strictness.

The situation in *Hibi*, however, was far different from the one here, and helps to illustrate the equities and painful facts in the instant case. Hibi was blocked from citizenship because he did not meet the requirement of United States residence which is a condition precedent to the attainment of citizenship for all alien servicemen regardless of the length and time of their service.[3] Petitioner here, unlike Hibi, lived in the United States and had a certificate of citizenship prior to entering the Army. Petitioner, a resident of the United States for 21 years, can be assumed to have developed strong emotional ties to this country and to people who are per-

manent residents or citizens, petitioner's wife and children. It has not been proven that petitioner, at any time, has acted in bad faith or that he has been other than a responsible member of society. To require petitioner to apply in Hong Kong for a visa to live in the United States—Government's sense of the practical effect of a denial here—is an unacceptable application of our law to someone who has made the strongest possible investments in this country, including two years of active military service and four years in reserves.

This Court construes section 329(a) to *allow* citizenship to petitioner on the basis of both of petitioner's legal theories. The inclusion of the dates of the Korean War within the section would indicate that legal regard be tendered to those who have served in continuingly tension-ridden Korea, though the service be after the strict statutory dates. Further, petitioner's readiness to serve within the dates placed in the section to cover the Vietnam War is not within the strict definition of "active duty" found in a separate Code Title, but ought to count for petitioner's eligibility since it followed two years of active service in which petitioner had demonstrated his willingness to serve this country. Lastly, this decision is predicated on the equitable principles announced in United States v. Convento, *supra*, 336 F.2d at 955, that ". . . in the absence of the clearest indication that Congress intended to confer well-merited benefits in arbitrary and niggardly fashion, we must assume that it did not."

Let counsel submit an appropriate order.

---

3. This provision continues to be embodied in section 329(a). Hibi had been given an opportunity to apply for United States citizenship in the Philippines both before the Philippines attained independence and for a short period thereafter.